UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| LG ELECTRONICS USA, INC. and LG ELECTRONICS, INC., <br><br> **Plaintiffs,** <br><br> v. <br><br> UNITED STATES, THE UNITED STATES INTERNATIONAL TRADE COMMISSION and SECRETARY LISA R. BARTON IN THEIR PROFESSIONAL CAPACITY AS THE SECRETARY OF THE UNITED STATES INTERNATIONAL TRADE COMMISSION <br><br> **Defendants.** | **Court No. 21-00520** |

## COMPLAINT

Plaintiffs LG Electronics USA, Inc. ("LGEUS") and LG Electronics, Inc. ("LGE"), by and through its counsel states the following claims against Defendants United States, the International Trade Commission (the "Commission"), and Lisa R. Barton in her professional capacity as the Secretary of the Commission.

### INTRODUCTION

1. This appeal challenges the Commission's failure to fully grant the application for access to proprietary information under administrative protective order ("APO") filed by Curtis, Mallet-Prevost, Colt & Mosle, LLP ("Curtis") on behalf of LGE and LGEUS in contravention of the express terms of the statute, the Commission regulations, and Commission past practice.

2. Plaintiffs have duly filed an APO application to participate in the Commission's safeguard extension proceeding regarding Crystalline Silicon Photovoltaic Cells, Whether or Not Partially or Fully Assembled (Inv. No. TA-201-075 (Extension)). The failure to fully grant this

APO application is preventing LGE and LGEUS's chosen counsel from participating in the aforementioned proceedings and are thus impinging Plaintiffs' rights as interested parties.

3. The Commission has provided no legitimate justification for why it has failed to fully grant the APO application that gives rise to this appeal.

4. This appeal seeks to compel the Commission to fully grant the APO application submitted by Plaintiffs' counsel, Curtis.

## PARTIES TO THE ACTION

5. Plaintiff LG Electronics, Inc. ("LGE") is a Korean producer-exporter of the merchandise subject to the underlying administrative proceeding. As such, LGE is a *bona fide* "interested party" as identified by the Commission's regulation, 19 C.F.R. §206.17(a)(3)(iii)(A).

6. Plaintiff LGEUS is both a U.S. importer of the merchandise subject to the underlying administrative proceeding and a U.S. producer of a "like or directly competitive article." As such, LGEUS is a *bona fide* "interested party" as identified by the Commission's regulation, 19 C.F.R. §206.17(a)(3)(iii)(A), (C).

7. Both LGE and LGEUS have retained Curtis to represent their interests in the in the Commission's safeguard extension proceeding regarding Crystalline Silicon Photovoltaic Cells, Whether or Not Partially or Fully Assembled (Inv. No. TA-201-075 (Extension)).

8. Defendant United States, through the International Trade Commission, administers various aspects of the United States' trade remedy laws.

9. Defendant the International Trade Commission, is an independent Commission with statutory authority to conduct various trade-related investigations and to perform certain analytical functions with respect to trade. In addition, the Commission enforces rules governing

the conduct of its proceedings including controls over access to proprietary information in its proceedings.

10. Secretary Lisa R. Barton is the Secretary of the Commission. The Office of the Secretary of the Commission is charged with, *inter alia*, reviewing applications for access to proprietary information under the APO and maintaining the list of individuals granted access to proprietary information in the Commission's proceedings.

## JURISDICTION

11. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(i) pursuant to which the Court of International Trade has "exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for— . . . administration and enforcement with respect to . . . matters" concerning those laws of the United States providing for "tariffs, duties, fees . . . on the importation of merchandise for reasons other than raising of revenue."

12. Further, the Court has jurisdiction over the full compass of the claims embodied in this complaint by virtue of 28 U.S.C. §1585 which states that "{t}he Court of International Trade shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. §1585. In addition, 28 U.S.C. §1361 states that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. §1361. These provisions grant the Court jurisdiction over all elements of this claim. *See Diamond Sawblades Mfrs. Coal v. United States*, 33 C.I.T. 1422, 1429-30, 650 F. Supp. 2d 1331, 1338-39 (2009) (finding jurisdiction over a mandamus proper in the Court of International Trade on the basis of the same statutory provisions).

## STANDING

13. LGE is a Korean producer-exporter of the merchandise subject to the underlying administrative proceeding and thus an interested party under the Commission's regulations. 19 C.F.R. §206.17(a)(3)(iii)(A). LGEUS is a U.S. producer and a U.S. importer of the merchandise subject to the underlying administrative proceeding and thus an interested party under the Commission's regulations. 19 C.F.R. §206.17(a)(3)(iii)(A), (C). As a result, both entities are entitled to participate in the underlying administrative proceeding.

14. Pursuant to Plaintiffs' status as "interested parties" under 19 C.F.R. §206.17(a)(3)(iii), Curtis, acting on Plaintiffs' behalf, is an "authorized applicants" under 19 C.F.R. §206.17(a)(1)(A) which states that "{a}n attorney for an interested party which is a party to the investigation" is eligible to file an application for access to proprietary information under an APO.

15. On August 12, 2021, Curtis filed a timely Entry of Appearance and application for access to proprietary information under an APO on behalf of LGE and LGEUS consistent with the Commission's regulations. 19 C.F.R. §201.11 (establishing the deadline for filing an entry of appearance); 19 C.F.R. §206.17 (describing procedures for requesting access to proprietary information under an APO).

16. On August 19, 2021, Secretary Barton on behalf of the Commission sent a letter to Curtis detailing certain concerns with "the propriety of granting your request for access to APO information."

17. Consistent with the request in that letter, on August 26, 2021, Curtis responded addressing the Commission's concerns but to the best of knowledge the Commission has yet to make a decision regarding the pending application.

18. On September 13, 2021, the Commission issued a letter granting conditional access to certain members of Curtis but failing to act on the entirety of the pending APO application.

19. As a result, LGE and LGEUS, both interested parties within the meaning of the statute with a right to participate in the proceeding, have been deprived of the service of their chosen counsel Curtis to the detriment of their representation in the underlying administrative proceeding.

20. LGE and LGEUS will continue to be harmed as long as the Commission continues to fail to act within the required time frame. The timeline for the specific proceeding as issue is very compressed with important initial filings due to the Commission on September 16, 2021. If Curtis is not granted access to proprietary information under the APO the firm will be prevented from providing effective representation to LGE and LGEUS. In fact, numerous questionnaire response containing proprietary information have already been filed and, under the rules, should have been served on other individuals admitted to the APO further prejudicing LGE and LGEUS's right to participate in the administrative proceeding.

## TIMELINESS OF THE ACTION

21. Pursuant to 28 U.S.C. § 2636(i), a civil action brought under 28 U.S.C. §1581(i) must be commenced within two years after the cause of action first accrues.

22. A claim first accrues at the earliest time that a suit could have been brought. *See, e.g.*, *Celta Agencies, Inc. v. United States,* 865 F. Supp. 2d 1348, 1356 (Ct. Int'l Trade 2012), *Barden Corp. v. United States,* 864 F. Supp. 2d 1370, 1376 (Ct. Int'l Trade 2012). In this case, the earliest time that this suit could have been brought was when the Commission exceeded its regulatory and practice-based deadline for issuing its APO application determination.

23. A claim under 28 U.S.C. §1581(i) must be commenced by the concurrent filing of a summons and complaint. USCIT Rule 3(a)(3). This complaint and summons were filed on September 16, 2021.

## FACTUAL BACKGROUND

24. A proper understanding of the relevant factual background requires an understanding of four separate legal proceedings: (1) the Commission's original safeguard investigation; (2) the World Trade Organization ("WTO") proceeding challenging that original determination; (3) the Commission's safeguard monitoring proceeding; and (4) the Commission's safeguard extension proceeding.

25. It is also important to understand the Commission's history and practice of granting APO applications to Curtis in these and other proceedings.

**The Commission's Original Safeguard Investigation**

26. On April 26, 2017, Suniva, Inc. filed a petition for global safeguard relief from imports of crystalline silicon-photovoltaic cells and modules. *Crystalline Silicon Photovoltaic Cells (Whether or not Partially or Fully Assembled into Other Products)*, Inv. No. TA-201-075 at 6, USITC Pub. 4739 (November 2017) ("USITC Pub. 4739").

27. On May 25, 2017, Curtis filed an entry of appearance and request for access to proprietary information under the APO on behalf of various entities in Korea including LG Electronics.

28. On June 1, 2017, the Commission published in the *Federal Register* its notice instituting its safeguard investigation concerning imports or crystalline silicon photovoltaic cells (whether or not partially or fully assembled into other products) ("CSPV"). *See Crystalline Silicon Photovoltaic Cells' (Whether or Not Partially or Fully Assembled Into Other Products);*

*Institution and Scheduling of Safeguard Investigation and Determination That the Investigation Is Extraordinarily Complicated*, 82 Fed. Reg. 25,331 (June 1, 2017).

29. On June 23, 2017, the Commission published its "APO Service List" in the docket of the safeguard proceeding identifying those law firms (and individual attorneys) for whom the Commission granted APO access. Curtis was included in the APO Service List as counsel for LGE and certain other parties.

30. Given its decision to grant Curtis APO access, Curtis had access to all confidential business proprietary information submitted to and generated by the Commission during the original safeguard investigation.

31. Curtis fully represented the interests of Plaintiffs LGE and LGEUS during the Commission's original safeguard investigation through the submission of briefs and participation in the Commission's hearings.

32. On September 22, 2017 the Commission voted unanimously that imports were a significant cause of serious injury from certain countries.

33. As a result of its affirmative conclusion of injury from imports, the Commission proceeded to its remedy phase; a phase during which the Commission sought and obtained briefing from parties and held a hearing. Curtis likewise fully represented the interests of Plaintiffs LGE and LGEUS during the Commission's remedy phase. *See, e.g.*, USITC Pub. 4739 at I-10 note 48 (noting LGE's comments on draft questionnaires)

34. On November 13, 2017, the Commission submitted its Safeguard Report to President in which the Commission explained its injury from imports conclusion and made remedy recommendations. *Proc. No. 9693*, 83 Fed. Reg. 3,541 (Jan. 25, 2018).

35. On November 15, 2017, the Commission issued a specific letter to all counsel demanding that counsel destroy all confidential business proprietary information obtained during the Commission's safeguard proceeding with 14 days of the letter.

36. Subsequently, on December 5, 2017, Curtis dutifully filed its Certification to the Commission certifying that all confidential proprietary material receive under the APO had been destroyed before the conclusion of the Commission's proceedings.

37. On January 23, 2018, Presidential Proclamation 9693 was published in the *Federal Register* imposing safeguard measures on CSPV imports from certain countries. *Proc. No. 9693*, 83 Fed. Reg. 3,541 (Jan. 25, 2018).

**China's WTO Challenge to the Original Determination**

38. On August 14, 2018 the Government of China ("China") submitted its Request for Consultations to the WTO pursuant to the Dispute Settlement Understanding concerning the United States imposition of safeguard measures on imports of CSPV products. *See* Exhibit 1.

39. On July 11, 2019 China submitted its request for a WTO Panel identifying broadly China's claims that the United States imposition of safeguard measures was inconsistent with the United States obligations under the WTO Safeguards Agreement. *Id*.

40. The WTO panel proceeding lasted from July 2019 until September 2, 2021 when the WTO Panel published its decision. *United States - Safeguard Measure on Imports of Crystalline Silicon Photovoltaic Products - Report of the Panel*, WTO Doc. WT/DS562/R (circulated Sept. 2, 2021)  During the proceeding, Curtis assisted China prepare and present its arguments case to the WTO Panel.  Although China's submissions to the WTO Panel were not public pursuant to WTO rules that treat such proceedings as confidential unless opened by

mutual agreement of the parties, none of China's submissions to the WTO contained any confidential business proprietary information or data. Porter Aff. at ¶¶ 21-22.[1]

41. Curtis was retained by China only to provide assistance with the Panel proceeding. Curtis did not represent the Government of China or Chinese private parties in the original U.S. law safeguard proceeding. Porter Aff. at ¶ 23. The Panel proceeding formally concluded on September 2, 2021 with the publication of the Panel's decision and therefore Curtis' engagement on this project has concluded. Curtis has not been retained by China for any other work concerning any future WTO proceedings on this matter. Porter Aff. at ¶ 24-25.

**The Commission's Safeguard Monitoring Proceeding**

42. On August 1, 2019 the Commission published in the Federal Register its Notice that the Commission had instituted an investigation for the purpose of preparing its monitoring report to the President. *See Crystalline Silicon Photovoltaic Cells, Whether or Not Partially or Fully Assembled Into Other Products: Monitoring Developments in the Domestic Industry Institution and Scheduling Notice for the Subject Investigation*, 84 Fed. Reg. 37,674 (Aug. 1, 2019).

43. On August 12, 2019, Curtis filed an entry of appearance and application for access to proprietary information under the APO on behalf of LGE.

44. On August 26, 2019, the Commission published its "APO Service List" in the docket of the safeguard proceeding identifying those law firms (and individual attorneys) for whom the Commission granted APO access.

---

[1] This affidavit is appended to the complaint as Attachment A.

45. Curtis fully represented the interests of Plaintiffs and LGEUS during the Commission's monitoring proceeding through the submission of briefs and participation in the Commission's hearing.

46. During the proceeding, on behalf of Plaintiffs LGE and LGEUS, Curtis presented a Pre-Hearing. Such Pre-Hearing Brief set forth the position of LGE and LGEUS as to whether there should be any changes to the safeguard measures for CSPV products. Specifically, such brief noted that Plaintiffs LGE and LGEUS has the following positions:

> "the safeguard measures on *cells* should be significantly relaxed in order to allow growth of the U.S. domestic industry"

> "the Commission should not eliminate or reduce the existing safeguard measures on imported CSPV products"

*See* Exhibit 2 (providing certain excerpts of LGE's public pre-hearing brief)

47. This position – oppose safeguard measures for cells, but support safeguard measures for modules – reflected the fact that, by the time of the Commission's safeguard monitoring proceeding, LGEUS was in the process of completing a brand, new CSPV module factory in Huntsville, Alabama. *Id.*

48. During its monitoring proceeding the Commission held a single hearing on December 5, 2019. *Crystalline Silicon Photovoltaic Cells, Whether or Not Partially or Fully Assembled Into Other Products: Monitoring Developments in the Domestic Industry*, Inv. No. 201-074, USITC Pub. 5021 at Appendix B (Feb. 2020 Monitoring) The Commission separated the hearing into two primary parts: Panel 1 and Panel 2. Panel 1 consisted of parties who wanted to maintain (or strengthen) the safeguard measures on CSPV products. And Panel 2 consisted of parties who wanted to terminate or weaken the safeguard measures on CSPV products. *Id.*

49. The Commission assigned LGE and LGEUS to Panel 1. *Id.* Or stated differently, as far back as December 2019, the Commission had considered LGE and LGEUS to be part of the U.S. industry favoring continued imposition of the safeguard measures for CSPV products.

**The Commission's Extension Proceeding**

50. Pursuant to applicable statutory provisions, the domestic industry is permitted to seek extension of safeguard measures provided that such request is made "not later than the date which is 6 months before" the safeguard measures are to terminate. *See* 19 U.S.C. §2254(c).

51. In July of 2021, the Commission Staff was informed that a coalition of U.S. CSPV producers were intending to submit a petition seeking the extension of the CSPV safeguard measures. Porter Aff. at ¶16. The Commission Staff was informed that the coalition would be made of up several U.S. producers, including LGEUS. Porter Aff. at ¶16.

52. Subsequently, the Commission Staff was informed that, because the coalition could not agree on all pertinent matters, there would be two coalitions seeking extension of the CSPV safeguard measures, one consisting of Auxin Solar and Suniva and one consisting of Hanwha Q Cells, LGEUS and Mission Solar. Porter Aff. at ¶17.

53. Pursuant to past practice and the "pre-clearance process" preference of Commission Staff, on Friday July 30, 2021 a draft extension petition on behalf of Hanwha Q Cells, LGEUS and Mission Solar was presented to the Commission Staff for their review. Porter Aff. at ¶18.

54. On Monday August 2, 2021 Daniel L. Porter, as counsel for LGEUS, along with counsel for Hanwha Q Cells and Mission Solar, participated in a conference call with Commission to talk about the draft extension petition. The meeting lasted a full hour. There were multiple Commission Staff participants, including attorneys from the General Counsel's

Office.  During the conference call, Mr. Porter made multiple comments, responding to questions from the Commission Staff and explaining the Coalition's position on different topics, including what confidential data should be sought in the Commission's questionnaires that would be analyzed by the Commission Staff and all counsel.  Porter Aff. at ¶19.

55.　　Not once during any time during the pre-clearance process did any of the Commission Staff ever make known to Mr. Porter, as counsel for LGEUS that there were would be an issue with Curtis obtaining APO access for the extension proceeding.  Porter Aff. at ¶20.

56.　　On August 2, 2021 and August 4, 2021, the Commission received petitions from various entities including LGEUS seeking the extension of the safeguard measures imposed by the proceedings described above.

57.　　On August 12, 2021, the Commission published in the Federal Register its Notice initiating an investigation regarding the possible extension of the safeguard measures currently in place on imports of crystalline silicon photovoltaic cells (whether or not partially or fully assembled into other products).  *Crystalline Silicon Photovoltaic Cells, Whether or Not Partially or Fully Assembled Into Other Products: Extension of Action*, 86 Fed. Reg. 44, 403 (Aug. 12, 2021);  *see also* Exhibit 3 (detailing the Commission's schedule for the extension proceeding).

58.　　Also on August 12, 2021, Curtis filed an entry of appearance and request for access to proprietary information under the APO on behalf of LGE and LGEUS.  *See* Exhibit 4.

59.　　On August 19, 2021 the Commission uploaded to EDIS two letters addressed to Curtis about Curtis' APO applications.  The letters were virtually identical, the primary difference being the addressees.  *See* Exhibit 5.

60. On August 26, 2021, Curtis filed a responsive letter contesting the basis the for the Commission's failure to act on its request to access proprietary information under the APO. *See* Exhibit 6.

61. On September 5, 2021, the Commission uploaded public and APO service lists that did not include Curtis. *See* Exhibit 7. As a result Daniel L. Porter emailed the Commission staff inquiring after the status of the application. Porter Aff. at ¶29.

62. On September 7, 2021, a member of the Commission's staff responded indicating that no decision had yet been made concerning the APO application. Porter Aff. at ¶30.

63. On September 10 2021, Daniel L. Porter responded to the communication from the staff noting concern with the failure to make a timely decision and noting Curtis' absence from the public service list. Porter Aff. at ¶31.

64. Also on September 10, 2021, the Commission issued a revised "Public Service List" that properly identified Curtis as representing the interests of LGEUS in the extension proceeding. At the same time, the Commission also issues a revised "APO Service List" that omitted Curtis. *See* Exhibit 8.

65. On September 13, 2021, a member of the Commission staff agreed to a follow up conversation with Daniel L. Porter in which Mr. Porter noted that the Commission's stated concerns regarding the WTO proceedings were moot and that the representation of LGE and LGEUS was being irreparably harmed by the Commission's ongoing failure to issue a decision. Porter Aff. at ¶33.

66. Also on September 13, 2021 the Commission issued a letter granting access to proprietary information disclosed under the APO to certain attorneys at Curtis but continued to

hold in abeyance a decision regarding the status of those attorneys who participated in the WTO dispute surrounding the safeguard action.  *See* Exhibit 9.

67. On September 15, 2021, Curtis filed a letter responding to the Commission's partial grant of APO access designating Matthew P. McCullough as temporary lead counsel and noting the absence of statutory or regulatory authority for the action taken.  The letter also noted Curtis' intent to initiate this appeal if the Commission continued to unlawfully withhold APO access to the remaining authorized applicants.  *See* Exhibit 10.

68. On September 16, 2021, the Commission granted partial access to the "Non-TWO Participants" at Curtis and published an updated APO service list.  *See* Exhibit 11.

## STATEMENT OF CLAIMS

69. In the following respects the Commission's determinations and ongoing conduct are unlawful and require the extraordinary remedy requested in the request for a writ of mandamus embodied in this complaints and related papers.

**Count 1: The Commission's Ongoing Failure to Render a Decision on Curtis' Entire APO Application is Contrary to the Statute and Deprives LGE and LGEUS of Their Chosen Counsel in Contravention of Their Rights**

70. Plaintiffs reassert and incorporate by reference paragraphs 1-69.

71. Under the statute, regulations, and practices governing the application for access to proprietary information under the APO, consideration of those applications, and determinations regarding those applications the Commission must make a determination within a specific time frame.  The Commission has failed to do so. The recent partial grant of authorization does not remedy the situation or excuse the violation of the statute with regard to the remaining applicants.

72. The Commission's ongoing failure to render a decision with respect to the remaining applicants is a violation of the procedural controls governing applications for access to information under the APO and is impinging Plaintiffs' right to be represented by their chosen counsel.

**Count 2: To the Extent the Commission Denies Any Part of Curtis' APO Application It Will Do So Without Legal Authority**

73. Plaintiffs reassert and incorporate by reference paragraphs 1-72.

74. The Commission lacks any legal basis for denying any portion of Plaintiffs' APO application and it would thus be unlawful and further injure the rights of Plaintiffs.

**PRAYER FOR JUDGMENT AND RELIEF**

WHEREFORE, fore the foregoing reasons, Plaintiffs pray that the Court enter judgment as follows:

(A) Enter judgment in favor of Plaintiffs;

(B) Issue a Writ of Mandamus to the Commission directing it to grant all authorized applicants access to proprietary information under the APO on behalf of Plaintiffs; and

(C) Immediately amend the service list to reflect the admission of Curtis to the APO.

September 16, 2021                    Respectfully submitted,

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

/s/ Daniel L. Porter
Daniel L. Porter
James P. Durling
James C. Beaty
1717 Pennsylvania Avenue, N.W. 13th Floor
Washington, D.C. 20006
(202) 452-1717

/s/ Jonathan Walsh
Jonathan J. Walsh
Nathaniel Ament-Stone
101 Park Avenue, 36th Floor
New York, New York 10178
(212) 696-6000

*Attorneys for Plaintiffs*