## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **LG ELECTRONICS USA, INC., and LG ELECTRONICS, INC.** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **UNITED STATES, THE UNITED STATES INTERNATIONAL TRADE COMMISSION and SECRETARY LISA R. BARTON IN HER PROFESSIONAL CAPACITY AS THE SECRETARY OF THE UNITED STATES INTERNATIONAL TRADE COMMISSION** <br><br> **Defendants** | **Court No. 21-00520** |

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR DECLARATORY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

/s/ Daniel L. Porter
Daniel L. Porter
James P. Durling
James Beaty
1717 Pennsylvania Avenue, N.W. 13th Floor
Washington, D.C.  20006
(202) 452-1717

/s/ Jonathan Walsh
Jonathan Walsh
Nathaniel Ament-Stone
101 Park Avenue, 36th Floor
New York, New York 10178
(212) 696-6000

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION AND SUMMARY OF ARGUMENT...................................................1

FACTUAL BACKGROUND ......................................................................................2

I.     THIS COURT HAS JURISDICTION ......................................................6

II.    THE COMMISSION'S DENIAL OF APO ACCESS WAS ARBITRARY, CAPRICIOUS, AND WITHOUT ANY LAWFUL BASIS ..................................12

     A.     The Secretary Has No Authority to Deny APO Access to an Interested Party's Counsel...........................................................................13

     B.     The Secretary's Denial Was Premised on Mistaken Assumptions .............16

CONCLUSION ............................................................................................21

## TABLE OF AUTHORITIES

### 1. Cases

*Arens v. United States*, 969 F.2d 1034, 1039 (Fed. Cir. 1992) ..................................................... 14

*Bar Bea Truck Leasing Co. v. United States*, 4 C.I.T. 104, 106 (1982) ......................................... 7

*Conoco Inc v. United States Foreign Trade Zones Board*, 18 F.3d 1581 (Fed. Cir. 1994) ............ 7

*Corus Grp. PLC v. ITC*, 217 F. Supp 2d 1347 (Ct Int'l Trade 2002) ............................................. 8

*Corus Grp. PLC v. ITC*, 352 F.3d 1351, 1358 (Fed. Cir. 2003) ......................................... 7, 9, 10

*Gilda Indus. v. United States*, 622 F.3d 1358, 1363 (Fed. Cir. 2010) ......................................... 12

*Habas Sinai Ve Tibbi Gazlar Istihsal Endustrisi, A.S. v. United States*, 415 F. Supp. 3d 1195, 1213 n.14 (Ct. Int'l Trade 2019) ........................................................................................... 13

*Hellebrand v. Sec'y of Dep't of Health & Human Servs.*, 999 F.2d 1565, 1570 (Fed. Cir. 1993) 14

*Huvis Corp. v. United States*, 570 F.3d 1347, 1354 (Fed. Cir. 2009) ......................................... 16

*Hyatt v. United States PTO*, 797 F.3d 1374, 1379 (Fed. Cir. 2015) ............................................. 7

*Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 136 S. Ct. 1969, 1977 (2016) ......... 14

*Lopez v. Davis*, 531 U.S. 230, 241 (2001) ................................................................................... 14

*Maple Leaf Fish Co. vs. United States*, 566 F. Supp. 899 (Ct. Int'l Trade 1983) ................ 7, 8, 10

*Maple Leaf Fish Co. vs. United States*, 762 F.2d 86 (Fed. Cir. 1985) ....................................... 7, 8

*Shakeproof Indus. Prods. Div. of Ill. Tool Works v. United States*, 104 F.3d 1309, 1313 (Fed. Cir. 1997) ..................................................................................................................................... 12

*Silfab Solar Inc. v. United States*, 892 F.3d 1340, 1345 (Fed. Cir. 2018) ................................ 6, 9

*United States ex rel. Siegel v. Thoman*, 156 U.S. 353, 359-60 (1895) ....................................... 14

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018) .............................. 7

### 2. Statutes

19 U.S.C. § 1677f(c)(1) ................................................................................................................ 11

19 U.S.C. § 2252(i) ................................................................................................................. 11, 13

28 U.S.C. § 1581(f) ...................................................................................................................... 11

28 U.S.C. § 1581(i) ................................................................................................................. passim

28 U.S.C. § 1581(j) ........................................................................................................................ 8

28 U.S.C. § 2631(i) ........................................................................................................................ 9

28 U.S.C. § 2640(e) ..................................................................................................................... 12

5 U.S.C. § 551(1) ......................................................................................................................... 10

5 U.S.C. § 702 ............................................................................................................. 6, 9

5 U.S.C. § 704 ................................................................................................................. 6

5 U.S.C. § 706 ........................................................................................................... 6, 12

Uruguay Round Agreements Act Pub. L. 103-465, title III, § 301(b), Dec. 8, 1994, 108 Stat. 4932 .......................................................................................................................... 13

## 3. <u>Regulations</u>

19 C.F.R. § 206.17(a) ............................................................................................... 6, 15

19 C.F.R. § 206.17(a)(1) .................................................................................... 13, 15, 19

19 C.F.R. § 206.17(a)(3) ............................................................................................... 14

19 C.F.R. § 206.17(b) ............................................................................................. 6, 15, 19

## 4. <u>Other administrative authority</u>

*Implementing Rules for the Uruguay Round Agreements Act*, 60 Fed. Reg. 6, 9 (Jan. 3, 1995).. 11

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs LG Electronics USA, Inc., ("LGEUS") and LG Electronics, Inc., ("LGE") (collectively, "LG" or "Plaintiffs") submit this memorandum in support of their motion pursuant to C.I.T. Rule 57 for a declaratory judgment or, in the alternative, summary judgment pursuant to C.I.T. Rule 56(a), on the Claim set forth in their Amended and Supplemental Complaint.

Plaintiffs offer this motion under both Rule 57 and Rule 56(a) so that the Court may resolve this controversy under one Rule or the other as it deems appropriate. In Plaintiffs' view, a declaratory judgment would be appropriate. Both declaratory relief and summary judgment in Plaintiffs' favor are proper because (i) there are no facts in dispute, and (ii) Plaintiffs are entitled to judgment as a matter of law, because the Secretary of the United States International Trade Commission (the "Commission") has no statutory or regulatory authority to deny the Administrative Protective Order ("APO") application of LG's chosen counsel in the Commission safeguard proceeding *Crystalline Silicon Photovoltaic Cells, Whether or Not Partially or Fully Assembled ("CPSV Products")*, Investigation No. TA-201-075 (Extension) (the "Proceeding"), given that there is no question LG's chosen counsel are *bona fide* authorized applicants.

Plaintiffs bring this action to challenge the Commission's inexplicable refusal to follow its own regulations and grant APO access to LG's counsel of choice. The Commission has claimed it has authority that it plainly does not have to deny an APO application by an authorized applicant. Moreover, the Commission's newly articulated

reason for denying APO access derives from factual assumptions which LG's counsel had demonstrated (prior to the Commission's decision) are incorrect.

Although such APO applications are normally granted within days, the application in this Proceeding was pending for 36 days before the Secretary denied APO access to several of LG's chosen counsel, including Daniel L. Porter and James P. Durling. For all the reasons stated in Plaintiffs' original petition to this Court for a writ of mandamus and motion for expedited relief (ECF. Nos. 2, 5, and 6) before the decision denying APO access was made, Mr. Porter and Mr. Durling cannot effectively represent Plaintiffs in the Proceeding without having access to the underlying confidential business information ("CBI"), and Plaintiffs are thus being denied the expert services of their counsel of choice. Accordingly, Plaintiffs now move for a declaratory judgment that Mr. Porter, Mr. Durling, and the other Curtis attorneys are entitled to APO access under the current Commission regulations.

## FACTUAL BACKGROUND

Plaintiffs note that they have provided a detailed discussion of all relevant facts in their Amended and Supplemental Complaint, which was just recently filed, and therefore do not believe it is necessary to repeat all of those facts here. Rather, we summarize below what we believe are the most critical facts. We respectfully submit that none of the facts detailed below are in dispute:

- During the Commission's original safeguard investigation in 2017, Daniel Porter and James Durling represented the interests of LGEUS and LGE. During that proceeding, Daniel Porter and James Durling were granted APO access by the Commission Secretary. The APO access was granted within

days of submission of the APO applications.  Curtis APO application in Inv. No. TA 201-75, dated May 25, 2017, Ex. 2 and Commission's APO approval in Inv. No. TA-201-75, APO Number 17-124 dated June 2, 2017, Ex. 3.

- These APO applications, in turn, were virtually identical to APO applications that the Commission has used for past safeguard cases and past antidumping/ countervailing duty ("AD-CVD") cases.  Such APO applications did not ask any questions about the attorney applicant's possible connection with past or future World Trade Organization ("WTO") proceedings.   Curtis APO application in Inv. No. TA 201-75, dated May 25, 2017, Ex. 2. Rather, the APO itself had standard language clarifying that signatories were allowed to use the APO information only in connection with that specific proceeding.

- On August 14, 2018 the Government of China ("China") submitted its Request for Consultations to the WTO concerning the United States imposition of safeguard measures on imports of CSPV products.  On July 11, 2019 China submitted its request for a WTO Panel identifying broadly China's claims under the WTO Safeguards Agreement.  The WTO panel proceeding lasted from July 2019 until September 2, 2021 when the WTO Panel published its report.  *US — Safeguard Measure on PV Products*, WT/DS562/R, Ex. 11.

- Four Curtis attorneys assisted China in preparing and presenting its arguments to the WTO Panel.  Curtis was retained by China only to provide assistance with the Panel proceeding.   Curtis did not represent the Government of China or Chinese private parties in the original U.S. law safeguard proceeding.  Porter Aff., Ex. 14, at ¶ 23.  The Panel proceeding formally concluded on September 2, 2021, and therefore Curtis's engagement on this project has concluded.  Curtis has not been retained by China for any other work concerning any future WTO proceedings on this matter.  Porter Aff. at ¶ 25.  Indeed, as indicated during the September 21, 2021 conference with this Court, none of the Curtis lawyers had any idea that China had appealed the Panel's decision to the Appellate Body.

- The Commission conducted its mid-term monitoring investigation for CSPV products during 2019.  During the Commission's monitoring investigation, Daniel Porter and James Durling represented the interests of LGEUS and LGE.  During that proceeding, Daniel Porter and James Durling were granted APO access by the Commission Secretary.  The APO access was granted within days of submission of the APO applications.  These APO applications, in turn, were virtually identical to APO applications that the Commission has used for past safeguard cases and past AD-CVD cases. Curtis APO application in Inv. No. TA 201-75 (Monitoring), dated August 12, 2019, Ex.

4, and Commission APO approval in Inv. No. TA-201-75 (Monitoring), APO Number 19-150 dated August 13, 2019, Ex. 5.  Such APO applications did not ask any questions about the attorney applicant's possible connection with the then ongoing WTO proceedings challenging the original safeguard measures.

- Pursuant to past practice and the "pre-clearance process" preference of Commission Staff, on Friday, on July 30, 2021, a draft safeguard extension petition for CSPV products was presented to the Commission Staff for their review on behalf of Hanwha Q Cells, LGEUS and Mission Solar.  Porter Aff., Ex. 14, at ¶ 18.  Such draft petition made clear that Daniel Porter and Curtis would represent LGEUS in the safeguard extension proceeding.

- On August 12, 2021, the Commission published in the Federal Register its Notice initiating an investigation regarding the possible extension of the safeguard measures currently in place on imports of CSPV products *Crystalline Silicon Photovoltaic Cells, Whether or Not Partially or Fully Assembled Into Other Products: Extension of Action*, 86 Fed. Reg. 44403 (Aug. 12, 2021), Ex. 7.  Nothing in the Commission's Initiation Notice indicated any changes to the Commission's normal process for granting APO access to this proceeding.

- Also on August 12, 2021, Curtis attorneys filed an entry of appearance and request for access to proprietary information under the APO on behalf of LGE and LGEUS.  *See* Ex. 8.  The APO application for this proceeding was the standard form application; specifically, there were no additional questions unique to the circumstances of this proceeding, or questions asking about the role that individuals may have been playing in connection with related WTO proceedings.  Significantly, no other party to the Proceeding objected to Curtis attorneys' APO applications.

- On August 19, 2021, the Commission uploaded to EDIS two letters addressed to Curtis about Curtis's APO applications.  The letters were virtually identical, the primary difference being the addressees.  *See* Ex. 9. The letters cited only an "appear{ance} that your request for access to APO information *on behalf of a petitioner* in this extension investigation directly conflicts with your representation in the WTO dispute, in which China challenges the validity of the safeguard measure, and consequentially would oppose continuation of the measure."  *Id.* (emphasis added).  The letters did not pose any specific questions to the recipients and instead requested only "additional  information to show why the above-named counsel should be granted access to the APO under the circumstances outlined in this letter."

Importantly, the Commission's August 19th letter did not ask if the Curtis attorneys were continuing to represent the Government of China. *Id.*

- On August 26, 2021, Curtis filed a responsive letter contesting the basis for the Commission's failure to act on its request to access proprietary information under the APO. *See* Ex. 10. This response focused on what Curtis understood to be the concerns expressed in the Commission's August 19th letters about LGEUS and LGE's change in position.

- On September 10, 2021, the Commission issued a revised "Public Service List" that properly identified Curtis as representing the interests of LGEUS in the extension proceeding. At the same time, the Commission also issues a revised "APO Service List" that omitted Curtis. *See* Ex. 12.

- On September 16, 2021, the Commission granted partial access to the "Non-WTO Participants" at Curtis and published an updated APO service list. *See* Ex. 13.

- Also on September 16, 2021, LGEUS and LGE initiated this proceeding by filing the initial complaint in this action. Complaint, ECF No. 2. Attached to the Complaint was the Sworn Affidavit of Daniel L. Porter, which noted that "Mr. Porter and Mr. Durling's representation of the Government of China was Limited and has since concluded." Moreover, this Sworn Affidavit further noted that "Curtis has not been retained for any additional work by the GOC regarding future WTO proceedings on this matter." Porter Aff., Ex. 14, at ¶¶ 21-25.

- On September 17, 2021, the Commission rejected, in part, the APO application filed on behalf of LGEUS and LGE asserting that "{t}he risk that counsel or consultants could {} make use of CBI accessed under the Commission's current APO in a WTO dispute on the same matter raises significant concerns regarding the integrity of the APO process." *See* Ex. 15, at 2.[1] In addition, the Commission indicated that it was considering for the

---

[1] We set forth in Exhibits 1 and 6 the administrative protective orders that the Commission issued for the original CSPV safeguard proceeding and the CSPV monitoring proceeding. As noted therein, the substantive content is identical. With respect to the CSPV safeguard extension proceeding, we note that, notwithstanding that the Commission has granted numerous other APO applications, it appears that the Commission has not yet uploaded to EDIS the actual administrative order for the CSPV safeguard extension proceeding. It is our view that this is an inadvertent oversight by the Commission, and that the substantive content of the APO for the CSPV safeguard extension proceeding is identical to those of the prior phases.

first time aspects of its grant of APO access in the course of the monitoring proceeding, a completely separate proceeding for APO purposes, which preceded the current extension proceedings. *Id.* at 3.

- There was no discussion in the Commission's September 17th letter related to the Commission's previous rationale regarding LGEUS's position with respect to the measures. The Commission's September 17th letter also did not address the mandatory provisions in 19 C.F.R. § 206.17(a) requiring the Commission to grant APO access to any "authorized applicant" (notwithstanding such claim was made by Plaintiffs in their August 26th letter) and instead addressed only the provisions in 19 C.F.R. § 206.17(b) providing the Commission discretion to impose conditions on that APO access.

- On September 21, 2021, counsel for LGEUS and LGE became aware for the first time during a status conference with the Court that the Government of China had appealed the Panel findings in the WTO proceedings in the course of a status conference with this Court. *See* Ex. 16. Actions by China in the WTO case subsequent to the September 2, 2021 public release of the panel report, including the ongoing appeal, are being taken without any knowledge by or assistance from Curtis attorneys.

## I.   THIS COURT HAS JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1581(i), as well as the Administrative Procedure Act, 5 U.S.C. §§ 702, 704, and 706. The Court of International Trade and the Federal Circuit have previously rejected the argument that challenges to the President's and/or the Commission's administration of safeguard regulations do not fall within § 1581(i) subject-matter jurisdiction. The Court of International Trade and the Federal Circuit have repeatedly confirmed that this Court has jurisdiction to hear a challenge to the "administration" of safeguard proceedings. *See*, *e.g.*, *Silfab Solar Inc. v. United States*, 892 F.3d 1340, 1345 (Fed. Cir. 2018) (explicitly noting that the Court of International Trade "had jurisdiction pursuant to 28 U.S.C. 1581(i)" to hear a challenge to the imposition of safeguard measures); *Corus Grp. PLC v. ITC*, 352 F.3d 1351, 1358 (Fed.

Cir. 2003) (explicitly noting that the Court of International Trade had jurisdiction to hear a challenge to the ITC's procedures for a safeguard injury determination); and *Maple Leaf Fish Co. vs. United States*, 566 F. Supp. 899 (Ct. Int'l Trade 1983) *aff'd*, 762 F.2d 86 (Fed. Cir. 1985).

28 U.S.C. § 1581(i) vests this Court with a "broad residual grant of jurisdictional authority," *Bar Bea Truck Leasing Co. v. United States*, 4 C.I.T. 104, 106 (1982). Specifically, the broad grant provides "exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . (B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue; (C) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or (D) administration and enforcement with respect to" these matters.

The Federal Circuit has confirmed the broad grant of jurisdictional authority of 28 U.S.C. § 1581(i) by highlighting the strong presumption that Congress intends judicial review of administrative action. For example, in *Conoco Inc v. United States Foreign Trade Zones Board*, 18 F.3d 1581 (Fed. Cir. 1994), a case in which the Federal Circuit overturned a Trade Court decision concluding there was no jurisdiction, the Federal Circuit noted, "It is well established that judicial review of agency action is to be presumed absent a clear and convincing evidence of Congressional intent to the contrary." *Id* at 1585 (citation omitted). S*ee also*, *e.g.*, *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018); *Hyatt v. United States PTO*, 797 F.3d 1374, 1379 (Fed. Cir. 2015)

- 7 -

(noting strong presumption of judicial review and noting exception for actions "committed to agency discretion by law," and citing cases and statutes); *Maple Leaf Fish Co. v. United States*, 5 C.I.T. 275, 278 (1983)  (collecting cases), *aff'd*, 762 F.2d 86 (Fed. Cir. 1985) .  If Congress had meant to exclude safeguard measures, it would have said so.  Congress specifically excluded the provision on importation of "immoral articles" from judicial review by this Court in 28 U.S.C. § 1581(j), indicating that Congress otherwise intended for § 1581(i) to permit judicial review of a broad scope of Commission administrative decisions relating to tariffs, duties, and other  restrictions, *inter alia*.

Given the broad language of Section 1581(i) and the strong presumption in favor of judicial review, it is not surprising that past decisions of the Court of International Trade and the Federal Circuit have confirmed that the "broad residual jurisdiction authority" bestowed by 28 U.S.C. § 1581(i) grants the Court of International Trade with jurisdiction to hear challenges to the manner in which the ITC administers *safeguard* proceeding.  For example, in *Corus Grp. PLC v. ITC,* 217 F. Supp 2d 1347 (Ct Int'l Trade 2002), plaintiffs challenged the ITC's procedures for safeguard investigations, specifically the  method by which the ITC counted votes for its safeguard injury determination concerning steel products.  The ITC moved to dismiss, claiming the Court of International Trade did not have jurisdiction.  The ITC's motion was rejected.  The Court of International Trade ruled that the plaintiffs' claim "clearly raises issues regarding whether the ITC properly carried out the laws providing for tariffs, duties and fees . . . on the importation of merchandise, and whether such laws are properly administered" and therefore the Court of International

Trade had jurisdiction pursuant to 28 U.S.C. § 1581(i).  *Id.* (emphasis added).  The Federal

Circuit agreed, noting:

> Because no other statute specifically vests the court with jurisdiction over duties imposed pursuant to the escape clause provision <u>and because there is no other statute precluding the court's jurisdiction in this case,</u> section 1581(i) vested the court with statutory jurisdiction over this {challenge to safeguard proceeding} case

*Corus Grp. PLC v. ITC*, 352 F.3d 1351, 1358 (Fed. Cir. 2003) (emphasis added).  *See also*

*Silfab Solar Inc. v. United States*, 892 F.3d 1340, 1345 (Fed. Cir. 2018).

Here, there is no question that Plaintiffs are challenging one aspect of the

Commission's *administration* with respect to its safeguard proceedings.  Plaintiffs are

seeking a judgment and declaratory relief from this Court that their chosen counsel are

entitled to APO access in the safeguard extension proceeding under the Commission

regulations.  This suit therefore concerns whether the applicable statutes and regulations

are "properly administered" by the Commission—a type of claim  that the Court of

International Trade and the Federal Circuit have recognized that this Court has jurisdiction

to hear.

In addition, the Administrative Procedure Act provides that "{a} person suffering

legal wrong because of agency action, or adversely affected or aggrieved by agency action

within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C.

§ 702.  Further, 28 U.S.C. § 2631(i) provides that "{a}ny civil action of which the Court

of International Trade has jurisdiction, other than an action specified in subsections (a)-(h)

of this section, may be commenced in the court by any person adversely affected or

aggrieved by agency action within the meaning of section 702 of title 5."

The Commission is an "agency" as defined by the Administrative Procedure Act. 5 U.S.C. § 551(1).  Plaintiffs are adversely affected and aggrieved by Defendants' acts and omissions in denying APO access in the Proceeding for Plaintiffs' counsel of choice, which will greatly harm Plaintiffs' ability to participate effectively in the Proceeding during the critical coming weeks when CBI is released to other interested parties and pre-hearing briefing is underway in the Proceeding.  Plaintiffs have standing to challenge Defendants' acts and omissions because (as Defendants have recognized) Plaintiffs are interested parties in the Proceeding.

The Court is empowered to review "whether the administrative action of the ITC . . . has been exercised in such manner as to conform with the procedural requirements of statutory authority and performed according to law."  *Maple Leaf Fish*, 5 C.I.T. at 279; *see also Corus*, 352 F.3d at 1366 (using similar language with respect to presidential authority in this area).  This language is plainly broad enough to encompass a challenge to the Secretary's denial of counsel's APO applications, because Plaintiffs allege that the Secretary has not acted in a manner that "conform{s} with the procedural requirements of statutory authority"; indeed, as discussed below, the applicable authority imposes a procedural requirement that the Secretary grant APO access to an interested party's counsel when such counsel is a *bona fide* authorized applicant.

Lastly, we believe that the Statement of Administrative Action that accompanied the legislation authorizing the Commission to adopt APO procedures for safeguard investigations also provides additional support for this Court having jurisdiction to hear Plaintiffs' case.  As the Commission itself noted in the preamble to its regulations:

> The Statement of Administrative Action approved by the URAA {Uruguay Round Agreements Act} states that it is expected that the Commission regulations will generally parallel the appropriate provisions of section 777 of the Tariff Act of 1930 (19 U.S.C. 1677f) and the regulations issued under that section.

Implementing Rules for the Uruguay Round Agreements Act, 60 Fed. Reg. 6, 9 (Jan. 3, 1995).  The analogous AD-CVD provision similarly prescribes that the Commission "shall" make confidential information available to interested parties.   19 U.S.C. § 1677f(c)(1).  And 28 U.S.C. § 1581(f) explicitly allows judicial review of agency APO access decisions.  Accordingly, it is a reasonable conclusion that when Congress required the Commission to promulgate these regulations under 19 U.S.C. § 2252(i), Congress intended for the scope of judicial review with respect to CBI in safeguard proceedings pursuant to 28 U.S.C. § 1581(i) to parallel judicial review under 28 U.S.C. § 1581(f).

Such conclusion makes perfect sense when the very nature of APO access is considered.  There is no question that, in the AD-CVD context, Congress afforded the opportunity for an interested party to challenge Commerce's or the Commission's grant of APO access to someone who the interested party believed should not be entitled to review the interested party's confidential information (for example, the in-house counsel of the interested party's biggest competitor).  However, the rules governing APO context do not distinguish between granting APO access and denying APO access.  Rather, all APO access decision may be challenged pursuant to the statutory provisions in the AD-CVD context. The Commission's claim that somehow safeguard proceedings are different presupposes that CBI in a safeguard proceeding is different from BPI in an AD-CVD proceeding.  But it is not.

## II.   THE COMMISSION'S DENIAL OF APO ACCESS WAS ARBITRARY, CAPRICIOUS, AND WITHOUT ANY LAWFUL BASIS

Pursuant to 28 U.S.C. § 2640(e), the "Administrative Procedure Act standard of review applies to civil actions brought under 28 U.S.C. § 1581(i)," meaning the Court must "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706.  *See also Gilda Indus. v. United States*, 622 F.3d 1358, 1363 (Fed. Cir. 2010) (citing these statutes and *Shakeproof Indus. Prods. Div. of Ill. Tool Works v. United States*, 104 F.3d 1309, 1313 (Fed. Cir. 1997)).

The plain language of the applicable regulations, and the legislative and regulatory history underlying their promulgation, compel the conclusion that the Commission's task in granting APO access is ministerial, not discretionary.  Although the regulations give the Commission discretion to impose *conditions* while granting the required APO access to "authorized applicants," here defined as an interested party's counsel in a Commission proceeding, the regulations use the mandatory term "shall" and thus plainly do not permit the Commission to deny APO access to authorized applicants.  The Secretary justified her denial of the four Curtis attorneys' APO applications on the basis of mistaken factual assumptions, and in any case could have imposed additional conditions on counsel's use of APO information or simply relied on the existing APO conditions, rather than denying APO access without lawful authority.   In sum, the Secretary's denial was "not in accordance with the law."  5 U.S.C. § 706.

**A.     The Secretary Has No Authority to Deny APO Access to an Interested Party's Counsel**

The Secretary's denial of APO access was plainly arbitrary, capricious, and "not in accordance with the law."   "Once promulgated, an agency must adhere to its own regulations."  *Habas Sinai Ve Tibbi Gazlar Istihsal Endustrisi, A.S. v. United States*, 415 F. Supp. 3d 1195, 1213 n.14 (Ct. Int'l Trade 2019) (citing Federal Circuit cases).  The statutes, regulations, and internal Commission guidance governing APO applications is unambiguous; indeed, the rules could not be more explicit, and they require that the Commission "shall" grant APO access to the counsel of interested parties in safeguard proceedings that qualify as "authorized applicants."

The Commission is obligated by law to promulgate regulations providing access to CBI under APO "to authorized representatives of interested parties" in safeguard proceedings, a provision enacted by Congress in 1994.  19 U.S.C. § 2252(i); *see also* Pub. L. 103-465, title III, § 301(b), Dec. 8, 1994, 108 Stat. 4932.  In response, the Commission promulgated regulations which leave the Secretary with <u>zero</u> discretion to deny APO access to an authorized applicant. Specifically, the regulations provide:

> Upon receipt of a timely application filed by **an authorized applicant, as defined in paragraph (a)(3)** of this section, . . . the Secretary **shall make available all confidential business information** contained in Commission memoranda and reports and in written submissions filed with the Commission at any time during the investigation . . . to the authorized applicant under an administrative protective order described in paragraph (b) of this section. . . .

19 C.F.R. § 206.17(a)(1) (emphasis added).   The regulation uses the mandatory term "shall."  The only preconditions to APO access are that the application be "timely" and it

- 13 -

be made by an "authorized applicant." The Commission does not and cannot dispute that the applications were timely. The Commission also does not and cannot dispute that Mr. Porter, Mr. Durling, and other Curtis attorneys are "authorized applicants," since they are attorneys for an interested party. 19 C.F.R. § 206.17(a)(3). And indeed, there is a decades-long history of the Commission's recognition that Mr. Porter and Mr. Durling are *bona fide* "authorized applicants." (Porter Aff., at ¶¶ 13-15.)

The word "shall" is unambiguous and leaves no room for the Commission to deny these applications. "Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 136 S. Ct. 1969, 1977 (2016); *see also Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("Congress' use of the permissive 'may' in {one statutory provision} contrasts with the legislators' use of a mandatory 'shall' in the very same section," where "Congress used 'shall' to impose discretionless obligations"); *United States ex rel. Siegel v. Thoman*, 156 U.S. 353, 359-60 (1895) (Congress's use of "shall" indicated "command" and its use of "may" indicated "permission"); *Hellebrand v. Sec'y of Dep't of Health & Human Servs.*, 999 F.2d 1565, 1570 (Fed. Cir. 1993) (distinguishing "shall" from "may" on the same basis); *Arens v. United States*, 969 F.2d 1034, 1039 (Fed. Cir. 1992) (interpreting C.F.R. regulations and noting, "The distinctions between the 1975 and the 1976 versions are clear and obvious. The Coast Guard in the 1976 regulation intentionally changed the operative language from the previous discretionary 'may' construction to the mandatory 'shall' language."). These decisions reflect the ordinary meaning of the term "shall" as requiring

something to be done.[2]  Moreover, this very regulation draws a explicit distinction between the mandatory "shall" in 19 C.F.R. § 206.17(a)(1) (when defining whom should be granted APO access) and the use of the permissive "may" in 19 C.F.R. § 206.17(b) (which gives the Commission discretion to add additional conditions when granting the APO).  Thus, both the plain meaning of the term "shall" on its face and its use in contrast to the permissive "may" in the same regulation confirm this reading of "shall" as a mandatory requirement.

In its September 17 letter, the Commission selectively quoted from 19 C.F.R. § 206.17(b) as purported authority for the Secretary's denial of Mr. Porter's and Mr. Durling's applications.  This argument, however, misrepresents the structure of obligations under the regulations.  19 C.F.R. § 206.17(a) says the Commission "shall" grant APO access to any "authorized applicant" and 19 C.F.R. § 206.17(b) then provides the Commission discretion to impose whatever conditions may be appropriate.  This conditions, however, are in the APO itself after access has been granted; they are not conditions to deny all access in the first instance.  The Commission did not cite <u>any</u> authority giving the Secretary discretion to outright deny APO access to an authorized applicant, and there is no such authority.

---

[2] Indeed, recent scholarship has cited survey data showing that 87–90 percent of law students and 76–80 percent of laypeople view "shall" as mandatory and "may" as permissive. Kevin Tobia, Brian G. Slocum, & Victoria Nourse, *Statutory Interpretation from the Outside* at *14, *44, COLUM. L. REV. (forthcoming), draft available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3786090.

Case 1:21-cv-00520-MAB    Document 23-1    Filed 09/24/21    Page 20 of 27

The Secretary's task of granting APO access to counsel for an interested party is ministerial, not discretionary. The Commission's new interpretation of its authority to deny APO access is remarkable and contradicts its past practice. To the best of counsel's knowledge, the Commission has never before sought to deny APO access because a lawyer was involved in some other related proceeding. There was no need to do so because the Commission APO practice otherwise mitigated any risks. That is why the APO has a specific requirement that parties use APO information only in connection with that specific proceeding. (*See* APOs, Exs. 1, 6.) And that is why the Commission has previously policed any violations that may occur. (*See* Sept. 17 Letter, Ex. 15.)

With these existing safeguards in place, the Commission has never before saw the need to deny a *bona fide* authorized applicant APO access. Where an agency departs from past practice, it "must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored"; it cannot simply reimagine its authority in contravention of longstanding regulations. *Huvis Corp. v. United States*, 570 F.3d 1347, 1354 (Fed. Cir. 2009). The Secretary's decision here was utterly without legal authority, and so must be reversed.

### B.    The Secretary's Denial Was Premised on Mistaken Assumptions

The regulatory language "shall" required the Commission to grant APO access to any "authorized applicant," subject to any appropriate conditions that might be needed. Moreover, the regulatory framework presupposes the Commission's having a good reason and articulating that reason for any decision limiting APO access. Yet, in this case, the

Commission has completely denied APO access to several "authorized applicants" based on mistaken assumptions.

The Secretary's letter of August 19, 2021 was the first time to raise any question about Curtis attorneys' APO applications.  That letter seemed to articulate a vague concern regarding a purported positional conflict arising from Curtis attorneys' advocacy of somewhat different positions on the solar-cell safeguard measures while representing different clients at distinct times in unrelated proceedings.  (*See* Ex. 5.)  Specifically, the Secretary wrote on August 19 that "{i}t appears that your request for access to APO information on behalf of a petitioner in this extension investigation directly conflicts with your representation in the WTO dispute, in which China challenges the validity of the safeguard measure, and consequently would oppose continuation of a measure."  *Id* (emphasis added).  The letter did not mention any other concerns relating to four Curtis attorneys' applications for APO access.

Given the nature of the concern articulated, Plaintiffs responded on August 26, 2021 to explain that the ethical rules clearly permit counsel to take different positions on behalf of different clients under such circumstances.  Only weeks later and after Plaintiffs had commenced this litigation, on September 17, 2021, did the Secretary for the first time assert that the concern did not relate to positional conflicts as such, but instead to the risk that counsel could make use of CBI accessed under the APO in the unrelated WTO proceeding. (*See* Sept. 17 Letter, Ex. 15.) The Secretary wrote that:

> Although the competitive decision making provision at 206.17(a)(3)(ii) may
> not apply directly in this situation, your dual representation {of LG and China
> in the unrelated proceedings} presents an analogous concern that CBI

released under the APO of the CSPV {crystalline silicon photovoltaic} extension investigation, as well as CBI previously released under the monitoring investigation, might inform your representation of the government of China in the ongoing WTO dispute.

(*Id.* at 2.)

Leaving aside that (1) there is no basis to conclude that the Curtis attorneys would violate the APO and its express condition not to use APO information in other proceedings and (2) the earlier safeguard proceedings involving China at the WTO and LG at the Commission were in fact legally and factually distinct proceedings, the Secretary's conclusion was predicated upon two assumptions that are just not true.

The first mistaken assumption is that Curtis attorneys continue to represent the Government of China in the WTO safeguard proceedings.  The Secretary's professed concern that the Curtis attorneys will communicate with the Government of China about what the attorneys learn in the U.S. safeguard extension proceeding or that such access might somehow "inform" such representation simply no longer applies since that representation had ended.  As counsel has already advised the Court and the Commission in the Porter affidavit, and as Plaintiffs reiterate today, Curtis no longer represents China in connection with the WTO proceeding and it is certain that that Curtis will not do so in the future.  That representation effectively concluded when the Panel released its public decision on September 2, 2021.  Curtis has not been working on any appeal.  Indeed, it was the Commission that first informed Curtis attorneys, at the September 21, 2021 conference, that China has taken an appeal in the WTO proceeding.  Since the Secretary's only articulated concern regarding Mr. Porter's, Mr. Durling's, and other attorney applications

presuppose that Curtis attorneys have an ongoing attorney-client relationship with China, those concerns are based on a factual assumption that is not true and therefore baseless.

The second  mistaken assumption is that this is any risk not already addressed by the existing framework of safeguards.  The existing APO already has a specific requirement to limit use of any APO information only in connection that specific Commission proceeding.  (APOs, Exs. 1, 6.)  And the Commission has a history of enforcing this provision.  (Ex. 15.)  These existing safeguards should be sufficient and the Commission has not articulated any reason why this existing safeguards are not sufficient.  And if the Commission were truly concerned about some particular possibility that Curtis attorneys might share CBI from the Commission Proceeding notwithstanding these existing safeguards, then 19 C.F.R. § 206.17(b) allows the Secretary to impose additional conditions in the APO.

Indeed, the flexibility under 19 C.F.R. § 206.17(b) underscores why the initial grant of APO access is mandatory to any "authorized applicant."  The availability of this alternative remedy for Commission concerns about the disclosure of CBI underscores that Commission regulations treat the granting of APO access to counsel pursuant to 19 C.F.R. § 206.17(a)(1) as a ministerial task—access that "shall" be provided—while allowing the Commission to fashion an appropriate APO given either broader concerns or any case-specific CBI concerns.

Moreover, although Mr. Porter and Mr. Durling had been seeking APO access since August 12, 2021, and repeatedly sought an update from the Commission about their APO applications in the ensuing weeks, the Commission did not clearly articulate any concerns

- 19 -

about possible improper CBI disclosure until September 17, 2021.  These concerns do not relate to anything in Mr. Porter's and Mr. Durling's August 12 applications.  The operative APO application and order (i) do not ask about counsel's participation in other proceedings but (ii) do make clear that parties cannot use CBI from the Proceeding in other proceedings. (APOs, Exs. 1, 6.)  The Secretary has not explained why this standard APO condition is not adequate to ensure the confidentiality of CBI provided to Mr. Porter, Mr. Durling, and others.  If the Secretary has specific concerns in this case, she can impose additional conditions but cannot use those unstated concerns to deny APO access outright to LG's chosen counsel.

Finally, whatever may have lead the Commission to deny the APO in the first place, the Commission is now aware that the four Curtis attorneys have no ongoing relationship with China in the WTO matter.  The Commission may have previously assumed Curtis was continuing to represent China, but that assumption can no longer stand.  Mr. Porter informed the Commission and the Court in his affidavit docketed one day *before* the Secretary's September 17, 2021 letter denying APO access to Mr. Porter and Mr. Durling that there was no ongoing representation.   And indeed, it was the Commission that informed Mr. Porter and Mr. Durling of China's appeal in the WTO proceeding.  The decision to grant an APO access is not a one-time event.  Nothing in the regulation prevents the Commission from updating its grants of APO access as appropriate given the factual circumstances.  The Commission cannot ignore these known facts to continue denying APO access with no basis in existing law or regulations.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court enter a judgment (1) declaring that Mr. Porter, Mr. Durling, and the other Curtis attorneys are entitled to APO access in the Proceeding, and ordering the Commission to provide APO access to these attorneys; and (2) providing any other relief this Court deems just and proper.

September 24, 2021                    Respectfully submitted,

                                     CURTIS, MALLET-PREVOST, COLT &
                                     MOSLE LLP

                                     /s/ Daniel L. Porter
                                     Daniel L. Porter
                                     James P. Durling
                                     James Beaty
                                     1717 Pennsylvania Avenue, N.W. 13th Floor
                                     Washington, D.C.  20006
                                     (202) 452-1717

                                     /s/ Jonathan Walsh
                                     Jonathan Walsh
                                     Nathaniel Ament-Stone
                                     101 Park Avenue, 36th Floor
                                     New York, New York 10178
                                     (212) 696-6000

                                     *Attorneys for Plaintiffs*

## <u>WORD COUNT CERTIFICATE OF COMPLIANCE</u>

This brief has been prepared utilizing Microsoft Word 2010 using a proportionally spaced typeface 13-point Times New Roman font.

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 6,046 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

<u>/s/ Daniel L. Porter</u>

Daniel L. Porter
Curtis, Mallet-Prevost, Colt & Mosle LLP
1717 Pennsylvania Avenue, NW
Washington, D.C., 20006

*Counsel for Plaintiffs*

Dated: September 24, 2021

**EXHIBIT LIST**

| Exhibit Number | Exhibit Name |
|---|---|
| 1 | Commission's APO for Original Investigation (May 23, 2017) |
| 2 | Curtis Entry of Appearance and APO Applications for Original Investigation (May 25, 2017) |
| 3 | Commission Approval for Curtis APO Application for Original Investigation (June 2, 2017) |
| 4 | Curtis Entry of Appearance and APO Applications for Monitoring Investigation (Aug. 12, 2019) |
| 5 | Commission Approval for Curtis APO Application for Monitoring Proceeding (Aug. 13, 2019) |
| 6 | Commission's APO for Monitoring Proceeding (Feb. 7, 2020) |
| 7 | ITC Notice re: Extension of Action, 86 Fed. Reg. 44403 (Aug. 12, 2021) |
| 8 | Curtis Entry of Appearance and APO Applications for Extension Investigation (Aug. 12, 2021) |
| 9 | Commission Letters to WTO and Non-WTO Participants Letters (Aug. 19, 2021) |
| 10 | Curtis Response to Commission's letter (Aug. 26, 2021) |
| 11 | WTO Panel Report (Sept. 2, 2021) |
| 12 | Commission's Published Service Lists (Sept. 10, 2021) |
| 13 | Commission APO Service List (Sept. 16, 2021) |
| 14 | Affidavit of Daniel L. Porter (Sept. 16, 2021) |
| 15 | Commission Letter to Curtis (Sept. 17, 2021) |
| 16 | Government of China Notice of Appeal of DS562 Panel Report (Sept. 20, 2021) |