UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| LG ELECTRONICS USA, INC. and LG ELECTRONICS, INC., <br><br>       Plaintiffs, <br><br>   v. <br><br> UNITED STATES, THE UNITED STATES INTERNATIONAL TRADE COMMISSION and SECRETARY LISA R. BARTON IN THEIR PROFESSIONAL CAPACITY AS THE SECRETARY OF THE UNITED STATES INTERNATIONAL TRADE COMMISSION, <br><br>       Defendants. | Court No. 21-00520 |

---

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT

---

BRIAN R. SOISET
JOHN D. HENDERSON
DAVID A. J. GOLDFINE
ALEXANDRA M. FELCHIN
Attorney-Advisors
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone (202) 205-3399
Fax: (202) 205-3111

DOMINIC L. BIANCHI
General Counsel
(202) 205-3061


ANDREA C. CASSON
Assistant General Counsel
  for Litigation
Telephone (202) 205-3105

**DATED: OCTOBER 4, 2021**

# TABLE OF CONTENTS

**Page**

I. STATEMENT PURSUANT TO RULE 56.1.........................................................................1

    A. Administrative Determinations Under Review ...............................................1

    B. Issue Presented.............................................................................................1

II. STATEMENT OF FACTS ...............................................................................................2

    A. The Commission's Original Safeguard Investigation on CSPV Products .........2

    B. The Commencement of the WTO Dispute Settlement Proceeding ...................3

    C. The Commission's Montoring Investigation...................................................4

    D. The Commission's Extension Investigation....................................................6

    E. Secretary Barton's September 17, 2021 letter to Curtis Mallet........................12

III. STANDARD OF REVIEW ............................................................................................15

IV. ARGUMENT ...............................................................................................................16

    A. Plaintiffs' Request for a Declaratory Judgment, Or in the Alternative
       Summary Judgment under Rule 56(a), Is Inappropriate ..................................16

    B. Assuming this Court has Jurisdiction Over the Case, Plaintiffs haAPve failed to
       Show an Entitlement to Relief Under Rule 56.1 .............................................17

    C. The Commission and Its Secretary have "Considerable Discretion" in Administering
       APOs in Safeguards Proceedings ..................................................................18

       1. The Interpretation of APO Procedures in Safeguards Proceedings Should be
          Informed by APO Procedures in Title VII Investigations...........................19

       2. LG's Interpretation of 19 C.F.R. § 206.17(a)(1) is Incorrect and Fails to
          Distinguish Between the Establishment of an APO Versus Granting Application
          to an APO ......................................................................................20

       3. The Commission has "Considerable Discretion" to Impose Conditions on APO
          Access that Serve "Legitimate Purposes" and that are Not "Overly Burdensome" ...23

    D. The Secretary's Conditions on Curtis Mallet's APO Applications Serve "Legitimate
       Purposes" and are not "Overly Burdensome" and Are Thus Not Arbitrary and
       Capricious......................................................................................................27

       1. Plaintiffs' Claim of "Mistaken Assumptions" Relies on Information Not on the
          Agency Record...............................................................................28

       2. The Secretary's Condition on Curtis' APO Access Serves a Legitimate Purpose ........29

       3. The Secretary's Condition on APO Access is Not Overly Burdensome......................34

V. CONCLUSION ...........................................................................................................35

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Capo, Inc. v. Dioptics Med. Prods., Inc.,*
    387 F.3d 1352 (Fed. Cir. 2004)................................................................16

*Cardinal Chem. Co. v. Morton Intern, Inc.,*
    508 U.S. 83 (1993)................................................................16

*Corus Grp. PLC v. Int'l. Trade Comm'n,*
    352 F.3d 1351 (Fed. Cir. 2003)................................................................15

*Dep't Of Commerce v. New York,* 139 S.Ct. 2551 (2019) ....................................................15, 16

*Invenergy Renewables LCC v. U.S.,*
    476 F. Supp.3d 1323 (Ct. Int'l Trade 2020) ................................................................15, 17

*Makita Corp. v. United States,*
    17 C.I.T. 240, 819 F. Supp. 1099 (1993)................................................................31, 32, 34, 35

*Maple Leaf Fish Co. v. United States,*
    762 F.2d 86 (Fed. Cir. 1985)................................................................15

*Motion Sys. Corp. v. Bush,*
    437 F.3d 1356 (Fed. Cir. 2006) (en banc)................................................................15

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983)................................................................15

*Silfab Solar, Inc. v. United States,*
    892 F.3d 1340 (Fed. Cir. 2018)................................................................15

*United States Steel Corp. v. United States,*
    730 F.2d 1465 (Fed. Cir. 1984)................................................................25, 26

**Statutes**

5 U.S.C. § 706................................................................17

5 U.S.C. § 706(2)(A)................................................................15

19 U.S.C. § 1332(g)................................................................19

19 U.S.C. § 1677f(c)(1)................................................................20

19 U.S.C. § 1677f(c)(1)(A) ............................................................................ *passim*

19 U.S.C. § 1677f(c)(2) ............................................................................ 26

19 U.S.C. § 2252(i) ............................................................................ 19

19 U.S.C. § 2252(a)(8) ............................................................................ 19

28 U.S.C. § 1581(i) ............................................................................ 17

28 U.S.C. § 2201(a) ............................................................................ 16

28 U.S.C. § 2640(e) ............................................................................ 17

**Code of Federal Regulations**

19 C.F.R. § 206.17(a)(1) ............................................................................ 20

19 C.F.R. §§ 206.17(b) ............................................................................ 27

19 C.F.R. § 207.7(a)(1) ............................................................................ 20, 21

19 C.F.R. § 207.7(b) ............................................................................ 27, 31

19 C.F.R. § 351.305(a)(1) ............................................................................ 23

19 C.F.R. § 351.305(c) ............................................................................ 23

**Administrative Decisions and USITC Publications**

*Summary of Commission Practice Relating to Administrative Protective Orders*,
    71 Fed. Reg. 39,355 (July 12, 2006) ............................................................... 30, 31

*Summary of Commission Practice Relating to Administrative Protective Orders*,
    73 Fed. Reg. 51,843 (Sept. 5, 2008) ............................................................... 30, 31

*Crystalline Silicon Photovoltaic Cells (Whether or not Partially or Fully
    Assembled into Other Products)*, Inv. 201-TA-075 ...................................... 1, 5, 15

*Crystalline Silicon Photovoltaic Cells, Whether or not Partially or Fully
    Assembled into Other Products,* 82 Fed. Reg. 25,331 (June 1, 2017) ...................... 2

*Exclusion of Particular Products from the Solar Products Safeguard Measure*, 83
    Fed. Reg. 47,393 (Sept. 19, 2018) ............................................................... 3

*Exclusion of Particular Products from the Solar Products Safeguard Measure*, 84
   Fed. Reg. 27,684 (June 13, 2019) ...............................................................................3

*Crystalline Silicon Photovoltaic Cells, Whether or not Partially or Fully
   Assembled into Other Products: Monitoring and Developments in the
   Domestic Industry Institution and Scheduling Notice for the Subject
   Investigation*, 84 Fed. Reg. 37,674 (Aug. 1, 2019) ..................................................4

*Procedures for the Conduct of Investigations of Whether Injury to Domestic
   Industries Results from Imports Sold at Less Than Fair Value or From
   Subsidized Exports to the United States*, 44 Fed. Reg. 76,458 (Dec. 26, 1979) ...............22, 24

*Crystalline Silicon Photovoltaic Cells, Whether or not Partially or Fully
   Assembled into Other Products: Extension of Action*, 86 Fed. Reg. 44,403
   (Aug. 12, 2021) ..............................................................................................6, 10

*Crystalline Silicon Photovoltaic Cells (Whether or not Partially or Fully
   Assembled into Other Products),* Inv. 201-TA-075, USITC Pub. 4739 (Nov.
   2017) ...............................................................................................................2, 3

*Crystalline Silicon Photovoltaic Cells, Whether or not Partially or Fully
   Assembled into Other Products:  Monitoring Developments in the Domestic
   Industry,* Inv. 201-TA-075 (Monitoring): USITC Pub. 5021 (Feb. 2020) ..............................5

**Legislative History**

H. Rpt. 100-576 (1988) ...............................................................................................23

H. Rpt. 103-826, pt. 1, (1994)......................................................................................19

S. Rpt. 96-249, (1979)...........................................................................................24, 27

S. Rpt. 100-71, (1987)...........................................................................................22, 25

S. Rpt. 103-412,(1994).  ..............................................................................................19

*Implementing Regulations for the Uruguay Round Agreements Act*, 60 Fed. Reg. 6
   (Jan. 3, 1995).........................................................................................................20

*Notification of Appeal by China*, WT/DS56212 ............................................................33

*Omnibus Trade and Competitiveness Act of 1988*, H.R. 4848, 100th Cong. § 1332................22, 23

Trade Act of 1979, H.R. 4537, 96th Cong. (1979) .........................................................21

*Trade Agreements Act of 1979*, H.R. 4537, 96th Cong.(1979)....................................21

*United States – Safegaurd Measure on Imports of CSPV Products*, Report of the
    Panel, WT/DS562/R , ("*Panel Report*") ...........................................................5, 33

*Uruguay Round Agreements Act*, H.R. 5110, 103rd Cong. (1994)................................19

 **Rules**:

Rule 56 ............................................................................................................................17

Rule 56(a)....................................................................................................................16, 17

Rule 56.1.....................................................................................................................17, 18

Rule 56.3 ..........................................................................................................................17

Rule 57 ..............................................................................................................................16

Rule 206.17(a)(1).............................................................................................................20

Rule 206.17(b) ..................................................................................................................31

**Other Authorities**

Staff Biographies at www.curtis.com (last visited October 3, 2021) ............................34

Defendant U.S. International Trade Commission ("Commission" or "ITC") hereby responds to the brief filed by plaintiffs LG Electronics USA, Inc. and LG Electronics, Inc ("Plaintiffs"). The Commission has simultaneously filed with this response a motion to dismiss for lack of subject matter jurisdiction, or in the alternative, failure to state a claim for which relief can be granted. If the Court denies this motion to dismiss, then the Commission argues in the alternative that Plaintiffs' motion for declaratory judgment, or in the alternative, summary judgment, should be rejected for the following reasons.

## I.  STATEMENT PURSUANT TO RULE 56.1[1]

### A.  Administrative Determinations Under Review

The decision under review is the letter from the Commission Secretary, Administrative Protective Order Application, *Crystalline Silicon Photovoltaic Cells, Whether or Not Partially or Fully Assembled ("CSPV")*, Inv. No. TA-201-075 (Extension), dated September 17, 2021, in which the Secretary placed conditions on attorneys from Curtis Mallet to access the administrative protective order ("APO") in this proceeding. *See* Complaint at Exh. 12.

### B.  Issue Presented

**1.** Was the Secretary's Letter of September 17, 2021 a significant procedural violation and arbitrary and capricious?

No. The Secretary's Letter of September 17, 2021, in which she placed conditions on attorneys from Curtis Mallet in accessing the underlying APO, was within her "considerable discretion" in administering APOs, served a legitimate purpose, and was not overly burdensome. Accordingly, the Secretary's action was not a significant procedural violation, and Plaintiffs' motion should be rejected.

---

[1] We address further below Plaintiff's framing of its motion and under which of the Court's rules the Commission believes this motion is properly considered.

## II.    STATEMENT OF FACTS

### The Commission's Original Safeguard Investigation on CSPV Products

On June 1, 2017, the Commission published a notice in the Federal Register stating that it had instituted a global safeguard investigation under Section 202 of the Trade Act of 1974 concerning imports of crystalline silicon photovoltaic cells (whether partially or fully assembled into other products ("CSPV products"). 82 Fed. Reg. 25,331 (June 1, 2017) (EDIS Document No. 613173). *Crystalline Silicon Photovoltaic Cells (Whether or not Partially or Fully Assembled into Other Products) ("CSPV Products"),* Inv. 201-TA-075.

On June 23, 2017, the Commission published its administrative protective order ("APO") service list identifying those law firms (and individual attorneys) for whom the Commission Secretary had granted APO access to confidential business information in the proceeding. The APO service list indicated that Curtis Mallet was granted APO access on behalf of the Korea Photovoltaic Industry Association, Hanwha Q- Cells Korea, LG Electronics, Hyundai Green Energy, and the Government of Canada. Curtis Mallet attorneys that were granted APO access included, among others, Daniel Porter, James Durling, Matthew McCullough, Christopher Dunn, and Valerie Ellis. (EDIS Document No. 615145).

On September 22, 2017, the Commission voted unanimously that CSPV products are being imported into the United States in such increased quantities as to be a substantial cause of serious injury, or threat of serious injury, to the domestic industry producing a like or directly competitive article. *Crystalline Silicon Photovoltaic Cells (Whether or not Partially or Fully Assembled into Other Products),* Inv. 201-TA-075, USITC Pub. 4739 (Nov. 2017), at 1. The Commission defined a single domestic industry consisting of "U.S. producers of CSPV cells

(whether or not partially of fully assembled into other products), including integrated producers of CSPV cells and modules and independent module producers." *See* USITC Pub. 4739 at 18.

On November 13, 2017, the Commission transmitted its report on the investigation to the President, including its serious injury determination and the remedy recommendations of the Commissioners. USITC Pub. 4739 (Nov. 2017).

On January 23, 2018, the President issued Proclamation 9693, announcing his decision to implement a safeguard measure with respect to certain CSPV products for a period of four years beginning on February 7, 2018.[2]

### The Commencement of the WTO Dispute Settlement Proceeding

On August 14, 2018, the Government of China submitted a request for consultations in the World Trade Organization ("WTO") pursuant to the Dispute Settlement Understanding concerning the imposition of the safeguard measure by the United States on imports of CSPV products.

On July 11, 2019, the Government of China submitted a request for a WTO dispute settlement panel, claiming that the U.S. safeguard measure on CSPV products was inconsistent with U.S. obligations under the WTO Agreement on Safeguards. As would be typical, the panel request document nowhere indicated that Curtis Mallet, or any other law firm, was advising the Government of China with respect to this dispute. In the panel request, China challenged, among other claims, the Commission's finding of a causal link between increased global imports of CSPV products and the serious injury suffered by domestic products of CSPV products. *See*

---

[2] Subsequent proclamations excluded certain solar products from the safeguard measure. *See Exclusion of Particular Products from the Solar Products Safeguard Measure*, 83 Fed. Reg. 47,393 (Sept. 19, 2018); *see also Exclusion of Particular Products from the Solar Products Safeguard Measure*, 84 Fed. Reg. 27,684 (June 13, 2019).

*United States – Safeguard Measure on Imports of CSPV Products, Request for the Establishment of a Panel By China*, WT/DS562/8 (July 11, 2019).

**The Commission's Monitoring Investigation**

On August 1, 2019, the Commission published a notice in the Federal Register stating that it had instituted a monitoring proceeding under Section 204(a)(2) of the Trade Act for the purpose of preparing a mid-term report to the President and the Congress on the results of its monitoring of developments with respect to the domestic industry since the imposition of the safeguard measure on CSPV products. *Crystalline Silicon Photovoltaic Cells, Whether or not Partially or Fully Assembled into Other Products: Monitoring and Developments in the Domestic Industry Institution and Scheduling Notice for the Subject Investigation*, 84 Fed. Reg. 37,674 (Aug. 1, 2019).

On August 12, 2019, Curtis Mallet filed an entry of appearance and application for access to confidential business information in the monitoring proceeding under the APO on behalf of LGE (and other clients).   The Curtis attorneys on the APO request included, among others, Daniel Porter, Matthew McCullough, James Durling, Christopher Dunn, Valerie Ellis, and Antonio Riva Palacio Lavin.  (EDIS Document No, 685063).

On August 26, 2019, the Commission published an amended APO Service list identifying law firms and individual attorneys for whom the Commission Secretary had granted APO access in the monitoring proceeding. (EDIS Document 686373).  The APO service list included the Curtis Mallet firm on behalf of LG Electronics, Inc.  and LG Electronics USA, Inc., and certain of its lawyers including Daniel Porter, Matthew McCullough, James Durling, Christopher Dunn, Valerie Ellis, and Antonio Riva Palacio Lavin.  At the time the Commission Secretary granted

this APO access, the Commission had no knowledge that lawyers from Curtis Mallet were also representing the Government of China in the WTO dispute.

Thus, the Curtis Mallet attorneys and staff on the APO list received access to confidential business information during the Commission monitoring investigation, while the WTO dispute settlement panel proceeding involving the challenge by the Government of China to the U.S. safeguard measure on imports of CSPV products was ongoing.

In February 2020, at the completion of its monitoring investigation, the Commission issued its report to the President on developments in the domestic industry producing CSPV products. *Crystalline Silicon Photovoltaic Cells, Whether or not Partially or Fully Assembled into Other Products: Monitoring Developments in the Domestic Industry,* Inv. 201-TA-075 (Monitoring): USITC Pub. 5021 (Feb. 2020). During this time, the Government of China submitted its first written submission to the WTO panel in DS562. *See United States – Safeguard Measure on Imports of CSPV Products*, Report of the Panel, WT/DS562/R, para. 1.8 (indicating China's first written submission filed January 10, 2020) ("*Panel Report*"). Because WTO submissions do not contain the names of the counsel or other representatives who prepared the submission, Curtis Mallet's role in representing the Government of China in the WTO dispute remained unknown to the Commission, and it remained so throughout the monitoring investigation.

It was not until the substantive hearings with the Panel--which took place virtually in fall 2020 through spring 2021--that Curtis Mallet's role in assisting the Government of China became known to the D.C. lawyers from the Office of U.S. Trade Representative ("USTR") and the Commission who were representing the United States in the dispute. *See* September 17, 2021 letter from Secretary Barton to Curtis Mallet at 3 (EDIS Document No. 752072).

Information communicated from USTR counsel to Commission staff indicated that Curtis Mallet attorneys Daniel Porter, James Durling, Antonio Riva Palacio Lavin, and Ana Amador appeared as part of the delegation on behalf of the Government of China in the WTO panel proceedings in opposition to the U.S. safeguard measure on CSPV products.  *See* August 19, 2021 letter from Secretary Barton to Daniel Porter, *et al.* (EDIS Document No. 749995).

**The Commission's Extension Investigation**

In the first week of August 2021, the Commission received two petitions under Section 204 of the Trade Act of 1974 requesting extension of the safeguard measure on CSPV products. The second petition was filed jointly on August 4, 2021 by (1) the law firm of Arent Fox on behalf of Hanwha Q Cells USA, Inc. and Mission Solar Energy; and (2) the law firm of Curtis-Mallet on behalf of LG Electronics USA, Inc.  (EDIS Document No. 748708).

On August 12, 2021, the Commission published in the Federal Register a notice of institution of an investigation under Section 204(c) of the Trade Act of 1974 to determine whether the action taken by the President with CSPV products continues to be necessary to prevent or remedy serious injury and whether there is evidence that the domestic industry is making a positive adjustment to import competition.  *Crystalline Silicon Photovoltaic Cells, Whether or not Partially or Fully Assembled into Other Products:  Extension of Action*, 86 Fed. Reg. 44,403 (Aug. 12, 2021).

On August 12, 2021, Curtis Mallet filed an entry of appearance in the extension proceeding on behalf of LG Electronics USA, Inc., a U.S. producer and importer of CSPV products, and LG Electronics, Inc., a Korean producer-exporter of CSPV products (EDIS Document 749453).  On the same day, Curtis Mallet filed an application with the Commission for access to APO material in the extension investigation.  (EDIS Document No. 749454).

Neither in its entry of appearance nor in its APO application did Curtis Mallet disclose its representation of the Government of China in the ongoing WTO dispute settlement proceeding. Curtis Mallet's filing included APO applications for (1) four Curtis Mallet attorneys that had participated in the WTO dispute as part of the delegation on behalf of the Government of China – Daniel Porter, James Durling, Antonio Riva-Palacio Lavin, and Ana Amador; (2) four Curtis Mallet attorneys as to which the Commission had no information indicating that they had participated in the WTO dispute on behalf of the Government of China – Matthew McCullough, Christopher Dunn, Valerie Ellis, and James Beaty; and (3) four trade analysts or trade policy specialists, the applications for all of whom indicated that they would be under the direction or control of Daniel Porter.

Curtis Mallet's representation of a petitioner seeking an extension of the U.S. safeguard measure on imports of CSPV products while it was representing the Government of China in the ongoing WTO dispute challenging the imposition of that measure raised issues concerning whether Curtis Mallet should be granted APO access in the extension proceeding. Accordingly, within one week of Curtis Mallet's APO application, on August 19, 2021, Commission Secretary Barton sent two letters to different groups of Curtis Mallet attorneys.

One August 19 letter from Secretary Barton to Curtis Mallet was addressed to Daniel Porter, James Durling, Antonio Riva-Palacio Lavin, and Ana Amador, four Curtis Mallet attorneys that, according to the Commission's information, had participated in the WTO dispute settlement proceeding on behalf of the Government of China. (EDIS Document No. 749995). The letter to these four Curtis Mallet lawyers stated: "As a member of the Government of China's delegation in that dispute, you argued against the imposition of the measure altogether. It appears that your request for access to APO information on behalf of a petitioner in this extension investigation directly conflicts

with your representation in the WTO dispute, in which China challenges the validity of the safeguard measure, and consequentially would oppose continuation of the measure." The letter stated that the Secretary was considering whether these attorneys should be precluded from access to APO information based on their representation of the Government of China in the WTO dispute, and directed them "to provide additional information to show why {these four attorneys} should be granted access to the APO under the circumstances outlined in this letter," requesting a written response by close of business, August 26, 2021.

The other August 19 letter from Secretary Barton to Curtis Mallet was addressed to Matthew McCullough, Christopher Dunn, Valerie Ellis, and James Beaty, the attorneys on the Curtis Mallet APO request in the extension investigation as to which the Commission had no information regarding any participation in the WTO dispute on behalf of the Government of China. (EDIS Document No. 749997). Secretary Barton's letter stated "As members of the Government of China's delegation in that dispute, your colleagues argued against the imposition of the measure altogether. While we are unaware of whether you have personally participated in the WTO dispute, the substantial participation by others in your law firm on behalf of the Government of China raises questions as to the propriety of granting your request for access to APO information on behalf of a petitioner in this extension investigation." The letter directed them "to provide additional information to show why {these attorneys} should be granted access to the APO under the circumstances," requesting a written response by close of business, August 26, 2021.

Both August 19 letters from Secretary Barton to Curtis Mallet closed with a statement that if Curtis Mallet had any questions, they should contact the Secretary via email: "Should you have any questions, please contact me at Secretary@usitc.gov."

On August 26, 2021, in response to Secretary Barton's two letters of August 19, 2021, Curtis Mallet submitted a single five-page letter signed by all eight Curtis Mallet attorneys on the APO request.  (EDIS Document No. 750354). The letter primarily consisted of legal argument that the Commission had no right to deny APO access to any of the Curtis Mallet applicants in the extension proceeding, regardless of their role in representing the Government of China in the ongoing WTO dispute challenging the validity of the underlying safeguard measure.  Although the August 26 Curtis Mallet letter provided minimal information as to the firm's work on behalf of the Government of China in the WTO dispute, it did acknowledge briefly and very generally that the firm had worked in the WTO dispute settlement proceedings to challenge the original safeguard measure, and it did not dispute that the four Curtis Mallet attorneys identified in Secretary Barton's August 19 letter had worked for the Government of China in that WTO proceeding.  However, it provided no information as to whether the other Curtis Mallet attorneys on the APO request had or had not participated in the WTO proceedings, information that Curtis Mallet did not furnish to the Commission until almost three weeks later, on September 15, 2021. Moreover, the letter suggested that the Commission's granting of APO access to Curtis Mallet in the monitoring proceeding in 2019, after China's request for WTO consultations and its request for a WTO panel, somehow waived any concerns that the Commission might have regarding Curtis Mallet's participation in the WTO dispute on behalf of the Government of China, as if these WTO documents had provided notice to the Commission of Curtis Mallet's participation in the WTO proceedings at the time the firm was granted that APO access.

On September 3, 2021, the Commission Secretary granted the APO applications of John M. Gurley of Arent Fox, representing LG's co-petitioners Hanwha Q Cells USA, Inc. and

Mission Solar Energy. (EDIS Document No. 751003), and Arent Fox was accordingly added to the APO service list (EDIS Document No. 750974).

On September 10, 2021, the Commission Secretary added Daniel Porter of Curtis Mallet on behalf of LG Electronics USA, Inc. to the Commission's public service list (EDIS Document No. 751384). Thus, Mr. Porter and Curtis Mallet on behalf of their client will be served with the non-confidential documents filed by parties in the proceedings, and Mr. Porter can continue to represent and advise his client based on those public documents. In addition, the Commission hearing scheduled for November 3, 2021 will be public, and in fact it is expected that most of the witnesses at the hearing—likely to be representatives of the various domestic and foreign producers, importers, and purchasers—will not have access to the APO information. *See CSPV Products: Extension of Action*, 86 Fed. Reg. 44,403 (Aug. 12, 2021).

Despite the specific direction at the end of both of Secretary Barton's two August 19, 2021 letters to Curtis Mallet regarding their APO applications that any questions should be addressed to her, Mr. Porter of Curtis Mallet initiated a series of email and telephone communications in early September 2021 regarding the status of Curtis Mallet's APO applications with a Commission staff member not specifically assigned to the Commission's extension investigation. *See* Exhibit 14 of Plaintiffs' Br. at paragraphs 29-33. These attempts by Mr. Porter at "back channel" communications with staff were not on the record before Secretary Barton when she granted APO access to certain Curtis Mallet attorneys on September 16, 2021, and denied APO access to other Curtis Mallet attorneys on September 17, 2021.

On September 13, 2021 Secretary Barton sent a letter to Curtis Mallet, addressed to all eight attorneys that had signed the August 26 response from Curtis Mallet. (EDIS Document No. 751578). The Secretary's letter explained that she was still considering the applications of the attorneys involved

on behalf of the Government of China in the concurrent WTO matter, but would "conditionally grant those applications for Curtis Mallet attorneys and consultants who certify that they are not and were not involved in the WTO matter." The letter also requested that appropriate measures be taken to screen the personnel at Curtis Mallet as to whom APO access had not been granted from any confidential business information released in the extension investigation. The Secretary's letter further requested that Curtis Mallet "temporarily designate a lead counsel who did not participate in the WTO matter to receive service of APO documents and to supervise any consultants and staff from your firm who will be working on this matter." Secretary Barton again closed the letter with a direction to Curtis Mallet to "address any further inquiries on this matter to me."

Two days later, on September 15, 2021, the eight Curtis Mallet attorneys who had previously signed the August 26, 2021 letter submitted one letter responding to the September 13 letter. (EDIS Document No. 751769). This letter stated that Matthew McCullough, Christopher Dunn, Valerie Ellis, and James Beaty were thereby providing their certifications that "they had no involvement at all" with "the Curtis project" of assisting the Government of China in the WTO proceeding challenging the original safeguard measure on CSPV products. The letter further designated Matthew McCullough as temporary lead counsel for purposes of APO access, and confirmed that the firm would undertake specific procedures to ensure that only those Curtis Mallet attorneys that had been granted APO access would have the ability to review APO material received.

The September 15, 2021 Curtis Mallet letter also demanded that full APO access be granted to all Curtis Mallet attorneys on the APO application, including those who represented the Government of China in the WTO dispute challenging the validity of the safeguard measure. As plaintiffs indicate in their pleadings, *see* Amended Complaint at para. 72, this letter also

stated that if such APO access were not granted by the next day, Curtis Mallet would initiate court proceedings seeking a writ of mandamus to compel the Commission to grant such access.

In the morning of September 16, 2021, in light of the certifications in Curtis Mallet's September 15 letter of the lack of involvement in the WTO dispute of four Curtis Mallet attorneys on the APO application, and the further representations by the firm in the letter, the Secretary granted APO access to lead counsel Matthew McCullough of Curtis Mallet on behalf of LG Electronics USA, Inc. and LG Electronics, Inc. (EDIS Document No. 751820). Also, in the morning of September 16, the Secretary issued a new APO service list, which now included Curtis Mallet on behalf of LG Electronics USA, Inc. and LG Electronics, Inc., and individual Curtis Mallet attorneys Matthew McCullough (lead counsel), James Beaty, Christopher Dunn, and Valerie Ellis. (EDIS Document No. 751824)

Thus, as of September 16. 2021, Curtis Mallet on behalf of its client LG had access to APO materials, and was accordingly served with APO materials, including questionnaires, filed by other parties in the extension investigation.

Later in the day on September 16, 2021, Curtis Mallet filed a complaint in this Court on behalf of LG. Curtis Mallet, however, did not file these papers with, or even provide to the Secretary in another form, the new factual allegations made in them. Thus, the various assertions contained in the affidavit of Mr. Porter in particular were not part of the record before Secretary Barton when she made her decision on September 16, 2021 to grant APO access to Curtis Mallet and four of its attorneys on behalf of LG, or when she made her decision on September 17, 2021 to deny APO access to four Curtis Mallet attorneys who had appeared on behalf of the Government of China in the WTO dispute.

**Secretary Barton's September 17, 2021 letter to Curtis Mallet**

On September 17, 2021, Secretary Barton sent a letter to Curtis Mallet stating her decision that "protecting the integrity of the APO in this proceeding requires that attorneys and consultants of Curtis Mallet who have been involved in representing the government of China in the above-referenced WTO dispute be denied APO access in this extension investigation." (EDIS Document No. 752072). The Secretary stated that "the purpose of the APO procedure is to assure parties that their CBI {confidential business information} will be protected and thereby encourage them to provide the requested information." The letter noted that Curtis Mallet's "simultaneous representation of parties with apparent contrary interests in different fora regarding these proceedings raises concerns regarding the use of CBI that inform my decision." It added that "Curtis Mallet's "dual representation presents an analogous concern that CBI released under the APO of the CSPV extension investigation, as well as CBI previously released under the monitoring investigation, might inform your representation of the government of China in the ongoing WTO dispute."

Secretary Barton's September 17 letter disputed Curtis Mallet's contention that the fact that Curtis Mallet had previously been granted APO access in the monitoring phase meant that it must be granted APO access in this proceeding as well. The letter noted that the WTO panel meeting at which USTR and Commission staff became aware of Curtis Mallet's participation on behalf of the Government of China in the WTO dispute was not held until after the Commission had already conducted and issued its report in the monitoring proceeding to which Curtis Mallet had previously been granted APO access. The letter added that Curtis Mallet's application for and access to the CBI in the monitoring investigation at the same time it was concurrently representing different positions by the Government of China in the WTO dispute was "troubling." Secretary's Barton's letter stated: "In that monitoring proceeding, you {Curtis Mallet} applied for, and were granted access to the CBI based

on your representation of LG, while, at the same time, unbeknownst to the Commission, and possibly to other parties in the Commission's investigation, you were also representing the government of China in urging the WTO Panel to find the underlying safeguard measure invalid *ab initio*."

Secretary Barton's September 17 letter also disputed Curtis Mallet's contention that its client had been harmed by the Secretary's careful consideration of Curtis Mallet's APO applications. The letter stated that four attorneys from Curtis Mallet were granted APO access on behalf of LG on September 16, 2021 following their certification of no involvement in the WTO matter, and Curtis Mallet was added to the APO service list on behalf of LG on the same day. The letter also noted that confidential questionnaire responses filed by interested parties were thereafter served on Curtis Mallet on behalf of its client. Furthermore, the letter noted that there had not yet been any general release of confidential business information in the investigation under the APO as of that date; since Curtis Mallet was now on the APO list, it would be able to access the confidential business information on behalf of its client when there were any such future APO releases. Furthermore, all applicants from Curtis Mallet were added to the public service list on September 10, 2021, and accordingly received service of non-confidential submissions in the investigation.

Secretary Barton's letter also pointed out that the WTO dispute "remains ongoing at least until the Dispute Settlement Body adopts the panel's report." It is a matter of public record that the WTO panel issued its report in DS562 on September 2, 2021, but the WTO Dispute Settlement Body had not adopted the panel's report as of the date of the Secretary's September 17, 2021 letter, and it has not subsequently adopted it. Rather, also as a matter of public record, China has appealed the Panel report, meaning that it will not be adopted until the appeal is

resolved. *See United States – Safeguard Measure on Imports of CSPV Products*, WT/DS562/12 (Sept. 16, 2021).

## III. STANDARD OF REVIEW

In reviewing Commission injury determinations in Section 201 (safeguard) investigations and any resulting Presidential action, the role of this Court is "very limited." *Maple Leaf Fish Co. v. United States*, 762 F.2d 86, 89 (Fed. Cir. 1985). In those instances, the Federal Circuit has explained that judicial review is limited to review a President's action imposing section 201 safeguards for a "clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated legal authority." *Id.* As the Federal Circuit also has explained, such non-statutory review of Presidential action for violation of a statute is "only rarely available." *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1346 (Fed. Cir. 2018); *see also Corus Grp. PLC v. Int'l. Trade Comm'n*, 352 F.3d 1351, 1356 (Fed. Cir. 2003) (highlighting that review is available to determine whether the President ''clear{ly} misconstrue{ed}'' his statutory authority); *Motion Sys. Corp. v. Bush*, 437 F.3d 1356, 1361 (Fed. Cir. 2006) (en banc) (explaining that courts may consider whether ''the President has violated an explicit statutory mandate'').

The APA dictates that a court shall hold unlawful any agency action that is arbitrary and capricious. 5 U.S.C. § 706(2)(A). In conducting this review, the Court may only determine "whether {the agency} examined 'the relevant data' and articulated 'a satisfactory explanation.'" *Invenergy Renewables LCC v. U.S.*, 476 F. Supp.3d 1323, 1349 (Ct. Int'l Trade 2020) (*citing Dep't Of Commerce v. New York*, 139 S.Ct. 2551, 2569 (2019)). "The scope of review under the 'arbitrary and capricious' standard is narrow." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Court may not substitute its judgment for that of an

agency but must confine itself to ensuring that the agency's decision remained 'within the bounds of reasoned decision making.' *Dep't Of Commerce v. New York*, 139 S.Ct. at 2569 (quoting *Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc*., 462 U.S. 87, 105 (1983)).

## IV. ARGUMENT

### A. Plaintiffs' Request for A Declaratory Judgment, Or in the Alternative Summary Judgment under Rule 56(a), Is Inappropriate

While the Plaintiffs' style their motion as for a declaratory judgment under Rule 57, this action is not one in which a declaratory judgment is appropriate. The purpose of a declaratory action is to allow "judicial resolution of {a} dispute without having to await the commencement of legal action by the other side." *See Capo, Inc. v. Dioptics Med. Prods, Inc*., 387 F.3d 1352, 1354-55 (Fed. Cir. 2004) (citations omitted). This distinct cause of action arose particularly in the patent context to allow an alleged patent infringer to commence action without waiting for a patent holder to initiate proceedings. *See, e.g., Cardinal Chem. Co. v. Morton Intern, Inc*., 508 U.S. 83, 95-96 (1993) (discussing history and intent behind the Declaratory Judgment Act). Here, Plaintiffs offer no explanation as to why a declaratory judgment is appropriate.

Further, Plaintiffs' requested relief is not for a declaratory judgment. The statute provides that upon appropriate pleadings from parties, a court "may declare the rights and other legal relations of any interested party" in granting a declaratory judgment. 28 U.S.C. § 2201(a). Plaintiffs' proposed order, however, is not simply of the alleged "right" and "legal relations" between it and the Commission, but rather of a remand to the Commission with an explicit order to grant applications for the underlying APO. Notwithstanding Plaintiffs framing, this requested relief is not a declaratory judgment. Because a declaratory judgment is neither appropriate in

these circumstances nor the actual remedy sought by Plaintiffs, the Court should reject their request for declaratory judgment.

While Plaintiffs request in the alternative that the Court issue summary judgment in its favor under Rule 56(a), such a request is again in error and would misconstrue the appropriate standard of review. As an initial matter Plaintiffs' contention that there are no facts in dispute is incorrect, as illustrated in the Commission's response to the complaint. Further, Plaintiffs claim jurisdiction pursuant to 28 U.S.C. § 1581(i), which entails a review of the record before the agency and whether the agency's action was arbitrary and capricious in view of this record. *See* 28 U.S.C. § 2640(e) *and* 5 U.S.C. § 706 ("the court shall review the whole record or those parts of it cited by a party…"). As noted above, a court's review of whether an agency action is arbitrary and capricious entails an examination of "whether {the agency} examined 'the relevant data' and articulated 'a satisfactory explanation.'" *Invenergy Renewables LCC v. U.S.*, 476 F. Supp.3d 1323, 1349 (Ct. Int'l Trade 2020). Rule 56.1 is for those disputes to be decided "solely on the basis of the record made before an agency." Indeed, it would be illogical to review the Secretary's decision in view of information not on record before her, as Plaintiffs attempt to do in their affidavit (discussed further below). Accordingly, Plaintiffs' request for summary judgment under Rule 56 is inappropriate and should be rejected as well.[3]

### B. Assuming this Court has Jurisdiction Over the Case, Plaintiffs have Failed to Show an Entitlement to Relief Under Rule 56.1

Concurrently with this motion, the Commission has filed a motion to dismiss for lack of subject matter jurisdiction, or in the alternative, failure to state a claim for which relief may be

---

[3] For these reasons, the Commission has not filed an Annex under Rule 56.3. As demonstrated by Defendants' Answer to the Amended and Supplemental Complaint, they deny numerous allegations by Plaintiffs, and disagree with Plaintiffs' assertions that there are no genuine issues of material fact.

granted.  If the Court rejects this motion to dismiss and finds jurisdiction, then the Commission moves in the alternative that Plaintiffs have failed to show that they are entitled to relief under Rule 56.1.  In a safeguard proceeding, judicial review is limited to finding actions that are a "significant procedural violation" and that are arbitrary and capricious.  Here, the Secretary examined the record before her and found that Curtis' simultaneous representation of the government of China in a forum where parties do not have APO access, while seeking APO access of behalf of LG in proceedings before the Commission on substantially similar matters, presented a concern about the handling and use of confidential information under the APO.  Further, Curtis' failure either to acknowledge these risks, or to describe any precautionary measures taken, justified additional conditions on APO access for attorneys from Curtis: a certification that they were not working in the WTO matter, which resulted in those attorneys who had worked on the WTO matter being denied APO access.  This condition served a legitimate purpose and was not overly burdensome, and it was thus within the Secretary's "considerable discretion" in administering the APO.  Accordingly, the action was neither a significant procedural violation nor arbitrary and capricious and should be sustained by this Court.

### C.  The Commission and Its Secretary have "Considerable Discretion" in Administering APOs in Safeguards Proceedings

Plaintiffs argue that the Commission, as delegated to its Secretary, has "zero discretion" to deny an APO application from an authorized applicant and that such decisions are "ministerial."  Plaintiffs Br. at 1 & 13-16.  Plaintiffs' argument is incorrect as a matter of law. The historical context and legislative history of APO procedures in Title VII proceedings, from which APO procedures in safeguards proceedings are drawn, illustrate that the Secretary retains "considerable discretion" in administering APOs and conditioning access to information under

these orders.  Plaintiffs' arguments to the contrary rely in large part on misconstruing the

directive under 19 U.S.C. § 1677f(c)(1)(A), which has been implemented into agency regulations

on APO procedures, and its arguments should accordingly be rejected.

### 1. The Interpretation of APO Procedures in Safeguards Proceedings Should be Informed by APO Procedures in Title VII Investigations

There are few statutory provisions specific to APO procedures in safeguards proceedings.

Primarily, the statute directs the Commission to "promulgate regulations to provide access to

confidential business information under protective order to authorized representatives of

interested parties who are parties to an investigation…"[4]  19 U.S.C. § 2252(i).  This provision

was added to the statute in 1994, *see Uruguay Round Agreements Act*, H.R. 5110, 103rd Cong. §

301(b) (1994), and Congressional reports for this legislation provide further guidance as to

Congress' intent regarding such regulations.  A report from the House Ways and Means

Committee indicated that it "expects that these regulations will, in general, parallel the

appropriate provisions under section 777 of the Tariff Act of 1930 and the regulations issued

under that section."  H. Rpt. 103-826, pt. 1, at 129 (1994).  A report from the Senate Finance

Committee similarly indicated that it "expects that APO procedures for safeguard investigations

will be administered in a manner similar to those currently followed for Title VII investigations."

S. Rpt. 103-412, at 107-108 (1994).  While not requiring identical regulations between safeguard

and Title VII proceedings, these reports support that the procedures should be similar.

Consistent with this directive, the Commission promulgated section 206.17 of its rules in

1995, which provides procedures for access to confidential business information in safeguard

---

[4] Additionally, the statute places certain requirements on the inclusion of confidential business information in reports sent to Congress or the President.  *See* 19 U.S.C. § 2252(a)(8) (incorporating rule from 19 U.S.C. § 1332(g)).

proceedings.  *See Implementing Regulations for the Uruguay Round Agreements Act*, 60 Fed.

Reg. 6 (Jan. 3, 1995).  In promulgating this rule, the Commission indicated that it had "modeled"

it on section 207.7 of its rules, which itself incorporates language from the Tariff Act of 1930

concerning the disclosure of business proprietary information in Title VII investigations.  *Id.* at

9; *see also* 19 U.S.C. § 1677f(c)(1).  Indeed, aside from the different terms "confidential business

information" versus "business proprietary information," the regulations are largely identical,

including with respect to sections 206.17(a)(1) and 207.7(a)(1), the provision relied upon by

Plaintiffs in their arguments.  *Compare* 19 C.F.R. § 206.17(a)(1) *with* 19 C.F.R. § 207.7(a)(1);

*see also* 19 U.S.C. § 1677f(c)(1)(A) (statutory provision from which the Commission regulation

is derived).

Given this background, section 206.17 of the Commission's rules should be interpreted in

a manner consistent with section 207.7 of the Commission's Title VII rules and 19 U.S.C. §

1677f(c)(1)(A) of the Tariff Act of 1930, for which there is more extensive background and

context.  Indeed, Plaintiffs appear to agree, and themselves urge the Court to look to the

Commission's handling of APOs under the Title VII rules for guidance.  Plaintiffs Br. at 10-11.

Plaintiffs' views of what this means, however, are inconsistent with the history and context of

APO procedures in both Title VII and safeguard investigations.

### 2. LG's Interpretation of 19 C.F.R. § 206.17(a)(1) is Incorrect and Fails to Distinguish Between the Establishment of an APO Versus Granting Applications to an APO

Plaintiffs misread the requirement of Commission Rule 206.17(a)(1) that the Secretary

"shall make available all confidential business information…to the authorized applicant under an

administrative protective order."   In Plaintiffs' erroneous view, this rule means that the

Secretary must grant all APO applications to parties meeting the definition of authorized

applicant to an interested party. Plaintiffs Br. at 13-14. Section 206.17(a)(1) is based on

language from Title VII provisions at section 207.7(a)(1) of Commission rules and 19 U.S.C. §

1677f(c)(1)(A). These Title VII provisions direct the Commission to create an APO and release

all confidential information on record to those accepted applicants on the APO, but they do not

direct the Secretary to blindly accept all applications to be added to an APO, as argued by

Plaintiffs. We explain below the history and development of these Title VII provisions that

illustrate their correct meaning.

In Title VII investigations, Congress first directed the Commission to provide for release

of confidential information under an APO in 1979. *See Trade Agreements Act of 1979*, H.R.

4537, 96th Cong. § 101 (1979) (amending § 777 of Tariff Act of 1930), 93 Stat. 144, 187-188

("1979 Act"). However, these procedures were fundamentally different from those used under

present law in that these earlier procedures assumed that confidential information would

generally *not* be released except through nonconfidential summaries. 1979 Act, 93 Stat. at 187.[5]

The statute provided for only limited and piecemeal release of confidential information under an

APO, as follows:

> Upon receipt of an application, which describes with particularity the information
> requested and sets forth the reasons for the request, the administering authority
> and the Commission may make confidential information submitted by another
> other party to the investigation available under a protective order…

---

[5] The text for this provision was as follows:
> Information submitted to the administering authority or the
> Commission which is designated as confidential by the person
> submitting it shall not be disclosed to any person (other than an
> officer or employee of the administering authority or the
> Commission who is directly concerned with carrying out the
> investigation in connection with which the information is
> submitted) without the consent of the person submitting it.

Trade Act of 1979, H.R. 4537, 96th Cong. § 101, 93 Stat. at 187 (1979).

1979 Act, 93 Stat. at 188. In promulgating regulations to implement the 1979 Act, the Commission indicated that it would narrowly use this discretion and release only domestic price and cost information under a protective order where a party demonstrated a "substantial need" for such information. *See Procedures for the Conduct of Investigations of Whether Injury to Domestic Industries Results from Imports Sold at Less Than Fair Value or From Subsidized Exports to the United States*, 44 Fed. Reg. 76,458, 76,461-76,462 (Dec. 26, 1979) ("1979 Regulations").

This context is crucial in understanding Congress' amendments to these procedures in 1988, which form the basis of the "shall" language in present Title VII law and that is relied upon by Plaintiffs. *See Omnibus Trade and Competitiveness Act of 1988*, H.R. 4848, 100th Cong. § 1332 (1988) ("1988 Act"). A report from the Senate Finance Committee concerning these 1988 amendments indicated that under the 1979 Act, the Commission's approach was not to release to parties the "bulk" of confidential information encompassing the Commission record. S. Rpt. 100-71, at 111-112 (1987). The report indicated concern that this approach "create{ed} difficulties for parties to ITC investigations," and the Committee proposed amendments whose:

> ...principal change from current law is that the provisions of section 777(c)(1)(A) of the Tariff Act of 1930, which permits the administering authority and the ITC to issue protective orders, are made mandatory for the ITC and require the ITC to release all confidential information under protective order...

*Id*. at 111. Thus, Congress' intent was that the Commission's APO procedure would change from one in which release of confidential information under APO was discretionary and piecemeal, to one in which an APO would be created in every proceeding and all confidential information on record would generally be released under the APO, with only limited exemptions for certain types of information.

The House expanded the Senate's proposed amendments to apply to both the Commission and U.S. Department of Commerce ("Commerce"), but they were otherwise adopted as proposed. H. Rpt. 100-576, at 622-623 (1988). The 1988 Act's language:

> Upon receipt of an application (before or after receipt of the information requested) which describes in general terms the information requested and sets forth the reasons for the request, the administering authority or the Commission shall make all business proprietary information presented to, or obtained by it, during a proceeding (except privileged information, classified information, and specific information of a type for which there is a clear and compelling need to withhold from disclosure) available to interested parties who are parties to the proceeding under a protective order described in subparagraph (B), regardless of when the information is submitted during a proceeding.

*1988 Act*, H.R. 4848, 100th Cong. § 1332(2) (1988). This provision continues to form the basis of present law, as set forth in 19 U.S.C. § 1677f(c)(1)(A). The context above illustrates that the statutory "shall" directive, which is mimicked in the Commission's rule, was for the Commission to create an APO and release all confidential information on record under this order, but it was not to direct the Commission to accept all applications to be added to an APO.[6]

### 3. The Commission has "Considerable Discretion" to Impose Conditions on APO Access that Serve "Legitimate Purposes" and that are Not "Overly Burdensome"

While Plaintiffs argue that the Commission, as delegated to its Secretary, has "zero discretion" to deny an APO application from an authorized applicant, Plaintiffs Br. at 13-16, Congress has repeatedly affirmed that this is not the case in the Title VII context. To the contrary, Congress has recognized that the Commission exercises "considerable discretion" in its

---

[6] Commerce likewise construes the statute this way. Its' regulations implementing 19 U.S.C. § 1677f(c)(1)(A) provide that the "Secretary will place an administrative protective order on the record" in each proceeding, *see* 19 C.F.R. § 351.305(a)(1), but also provide that approval of an APO application will "normally" be granted "unless there is a question regarding the eligibility of the applicant to receive access." 19 C.F.R. § 351.305(c).

administration of APOs and in imposing conditions on such orders to protect the confidentiality of information in Commission proceedings.

In first providing for APO procedures in the 1979 Act, the Senate Finance Committee was clear that access to an APO was not automatic and outlined criteria that the Commission could use to limit access to parties:

> Generally, it is expected that disclosure will be made *only to attorneys who are subject to disbarment from practice before the agency in the event of a violation of the order*. With respect to the ITC, it is anticipated that, to the extent that information cannot be made available in a non-confidential form which permits an adequate analysis of the issues in a case by a party, such information will be disclosed under a protective order *if the ITC believes such information can be protected from disclosure*.

S. Rpt. 96-249, at 101 (1979) (emphasis added). The Commission's implementing regulations under the 1979 Act recognized this discretion and accordingly did not allow for in-house counsel, economists, or other non-lawyer professionals to have access to confidential information under protective order due to concerns about disclosure or an inability to sanction such individuals. *See 1979 Regulations*, 44 Fed. Reg. at 76,458 (Dec. 26, 1979).

Even when making the issuance of an APO and release of confidential information under this order mandatory in the 1988 Act, the Senate Finance Committee again affirmed the Commission's "considerable discretion" in administering such orders. Indeed, it explicitly recognized that the Commission could impose "terms and conditions" on access to orders and outlined considerations that should inform such conditions:

> The ITC would have *considerable discretion* in determining how to frame and administer these protective orders, so long as disclosure of all information occurs in an expeditious manner, *so long as the terms and conditions of such protective orders are reasonably calculated to accomplish legitimate purposes and so long as such terms and conditions are not onerous or overly burdensome so as to defeat the intent and purpose of this section*.

S. Rpt. 100-71, at 111 (1987) (emphasis added). The Committee thus outlined that the Commission's discretion in administering orders permitted it to impose conditions on access to such orders that (i) accomplish legitimate purposes and (ii) are not overly burdensome so as to defeat access to confidential information.

The Committee further noted specific examples where "legitimate purposes" could justify limitation of "{t}he persons to whom access to confidential information may be granted under protective order." *Id*. at 113. The Committee noted that in granting access to APOs, the Commission should be "guided by the factors enumerated in *United States Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984)," which is discussed further below. *Id*. The Committee also noted that "information should only be made available if the ITC is satisfied that adequate sanctions for disclosure are available against the proposed recipient of the information." S. Rpt. 100-71, at 113 (1987). Finally, the Committee noted the importance of the Commission protecting "its reputation for strictly maintaining the confidentiality of information submitted to it" through both the "threat" and "use" of sanctions, which it noted should include "withholding of confidential information from the party or its representative" as circumstances warrant. *Id*. at 114. Each of these instances may encompass a timely application from a party meeting the definition of authorized applicant, yet Congress' recognition that denial of APO access could nonetheless be warranted illustrate that consideration of APO applications is neither automatic nor ministerial, as argued by Plaintiffs.

The directive to apply "the factors enumerated" from the Federal Circuit's decision in *United States Steel* particularly supports the discretionary nature of administering the APO and whether to grant access to applicants. While the underlying dispute in *United States Steel* concerned whether in-house counsel be granted access to confidential information during a

judicial appeal, the court's holding was that decisions on granting "access {to confidential information} by retained as well as in-house counsel should be governed by the facts." *United States Steel Corp.*, 730 F.2d at 1468-69. The court rejected that a "general assumption that one group of lawyers" -- in that case in-house counsel-- might breach a protective order was sufficient to justify a blanket ban on such counsel having APO access. *Id*. at 1468. Instead, the Court held that that decisions should be guided "by the facts on a counsel-by-counsel basis." *Id*. at 1468. Such a contextual analysis necessitates discretion in considering applications to be added to an APO. Yet Plaintiffs would reject this "counsel-by-counsel" approach and instead have the Secretary adopt a general assumption that all individuals in a firm constituting "retained counsel" who file timely applications and meet the definition of authorized applicants in every instance be granted APO access. Plaintiffs Br. at 13-14. Plaintiffs' argument inverts the Federal Circuit's holding in *United States Steel* by relying on general assumptions regarding a group of lawyers, yet the decision's holding necessitates that the Secretary exercise discretion by examining applications on a counsel-by-counsel basis.

Indeed, Congress' grant of judicial review specifically for *denial* of access to confidential information in Title VII proceedings would be illogical if granting such access were merely "ministerial" and an issue of "zero discretion," as argued by Plaintiffs.[7] *See* 19 U.S.C. § 1677f(c)(2).

---

[7] Plaintiffs also misstate the judicial review provided in Title VII proceedings, arguing that "Congress afforded the opportunity for an interested party to challenge Commerce's or the Commission's *grant* of APO access…" Plaintiffs Br. at 11 (emphasis added). Congress provided specific juridical review only where the agency "denies a request for information," not where a request is granted. 19 U.S.C. § 1677f(c)(2).

Sections 206.17(b) and 207.7(b)[8] of the Commission's regulations implement this discretion by allowing the imposition of "such other conditions as the Secretary may require" in adding applicants to an APO. Plaintiffs argue that such "conditions" apply to the APO itself but cannot serve as the basis to deny an application to be added to the APO. Plaintiffs Br. at 15. Plaintiffs' argument, however, ignores that such conditions serve as both a predicate to APO access and then, upon signature, as binding obligations for continued access. The regulations themselves connect the "conditions" with the "personal sworn statement" that is part of an APO application. *See* 19 C.F.R. §§ 206.17(b) and 207.7(b); *see also* Exhibit 4 of Complaint, EDIS Doc. 749454 (Plaintiffs' APO application for underlying proceeding). Plaintiffs' flawed reasoning would require that the Secretary accept an APO application even where there were concerns that confidential information would not be protected, yet Congress has explicitly directed the opposite and indicated that the Commission should not release information under an APO if there were concerns about its disclosure. S. Rpt. 96-249, at 101 (1979).

The development of Title VII APO procedures thus illustrate that the Secretary has "considerable discretion" in administering APOs. Such discretion allows the Secretary to impose conditions that serve legitimate purposes and that are not overly burdensome. Given that APO procedures for safeguard proceedings at section 206.17 of Commission rules parallel Title VII procedures, the Secretary similarly holds considerable discretion in safeguard proceedings when considering APO applications.

### D. The Secretary's Conditions on Curtis Mallet's APO Applications Serve "Legitimate Purposes" and are not "Overly Burdensome" and Are Thus Not Arbitrary and Capricious

---

[8] The safeguard provision at 19 C.F.R. § 206.17(b) and the Title VII provision at 19 C.F.R. § 207.7(b) have identical language.

As outlined above, the Secretary has "considerable discretion" to impose conditions on access to APOs that serve legitimate purposes and that are not overly burdensome. In response to applications from attorneys at Curtis Mallet in the *CSPV* safeguards extension proceeding, the Secretary conditioned access to the APO on a certification that these attorneys "are not and were not involved in the WTO matter" concerning China's challenge to the underlying *CSPV* safeguards measure. Indeed, the Secretary approved applications with such a certification and denied applications where the attorneys did not (and presumably could not) make such a certification. *See* Exhibits 9 (EDIS Doc. 751578) & 12 (EDIS Doc. 752072) of Complaint.

Plaintiffs primarily argue that this condition was arbitrary and capricious because the Commission lacks any legal authority to exercise any discretion in reviewing APO applications. As demonstrated in Section IV.C. above, Plaintiffs' argument is incorrect as a matter of law. Plaintiffs alternately argue that the Secretary's decision was not based on a "good reason" or relied on "mistaken assumptions." Plaintiffs Br. at 16-17. As explained below, the record supports the Secretary's exercise of her discretion to impose conditions that served a legitimate purpose and were not overly burdensome. Her exercise of discretion in this case was thus not arbitrary and capricious and should be sustained by this Court.

1. **Plaintiffs' Claim of "Mistaken Assumptions" Relies on Information Not on the Agency Record**

In their arguments to this Court, Plaintiffs attempt to introduce new evidence that was not on record before the Commission Secretary. Based on this new extra-record evidence, Plaintiffs' claim that the Secretary acted on "mistaken assumptions." In particular, Plaintiffs focus on their litigation allegation that Curtis "no longer represents China in connection with the WTO proceedings." Plaintiffs Br. at 18-19; *see also* Exhibit 14 of Plaintiffs Br. at pgs. 5-6. While Plaintiffs style their affidavit to the complaint as having "advised" the Commission of this fact,

Plaintiffs elected not to provide such information in any of their communications with the Secretary on record before the Commission, *see* Exhibits 6 and 10 of Complaint, notwithstanding that the Secretary specifically requested Curtis to "provide additional information" concerning its work in the WTO matter. *See* Exhibit 5 of Complaint, EDIS Docs. 749995 & 749997.

Further, Mr. Porter's "back channel" attempts to communicate with Commission staff were not on record before the Secretary. Mr. Porter initiated a series of email and telephone communications about Curtis' APO applications in early September 2021, *see* Exhibit 14 of Plaintiffs' Br. at paragraphs 29-33, yet these communications were with staff that were neither in the Secretary's office nor even assigned to the Commission's CSPV extension investigation. Given that each of the Secretary's letters explicitly directed that any questions on the APO application be directed to the Secretary and provided contact details, *see* Complaint Exhibits at 5 (EDIS Docs. 749995 & 749997), 9 (EDIS Doc. 751578), and 12 (EDIS Doc. 752072), it is unclear why neither Mr. Porter nor other Curtis personnel followed this direction to provide further detail *to the Secretary* about their representation of the government of China. Indeed, notwithstanding Plaintiffs' assertions that its actual record responses to the Secretary's requests were responsive to the concerns identified, Plaintiffs Br. at 17-18, these "back channel" efforts to communicate with Commission staff, and the introduction of new factual evidence in this litigation, would seem a tacit acknowledgment that they were not.

Plaintiffs' reliance on facts first introduced before this Court, and that are not on the agency record, thus is unavailing. Under the proper standard of review for this type of proceeding, these facts are not on the record under review and should not inform this Court's decision.

## 2. The Secretary's Condition on Curtis' APO Access Serves a Legitimate Purpose

In conditioning access of Curtis attorneys and consultants to the underlying APO, the Secretary explained the legitimate purpose served by this decision. The Secretary noted that Custis' "simultaneous representation of parties with apparent contrary interests in different fora regarding these proceedings raises concerns regarding the use of CBI." Exhibit 12 of Complaint, EDIS Doc. 752072, at 2. Further, "{t}he risk that counsel or consultants could…make use of CBI accessed under the Commission's current APO in a WTO dispute on the same matter raises significant concerns." Despite these concerns, Curtis' responses to the Secretary's inquiries "indicated no precautions or measures taken to ensure that attorneys and consultants working on the WTO matter would make no use of CBI accessed by them under the Commission APO." *Id*. at 2-3. The Secretary explained that it was "…in the Commission's interest to prevent the use of APO information by counsel who are representing parties in a forum where the Commission does not share such information and where that counsel has not provided the Commission with any explanation as to how the CBI will be safeguarded against use in the other forum." *Id*. at 3.

Plaintiffs argue that there is "no basis" to conclude that Curtis' attorneys would have violated the underlying APO by using confidential information in the WTO matter. Plaintiffs Br. at 18. However, the Secretary's concerns are not a hypothetical but reflect multiple instances in which attorneys with APO access before the Commission breached this APO when representing different parties in related WTO matters. *See Summary of Commission Practice Relating to Administrative Protective Orders*, 71 Fed. Reg. 39,355, 39358 (July 12, 2006) (describing inadvertent disclosure of confidential document to foreign government client in WTO dispute); *see also Summary of Commission Practice Relating to Administrative Protective Orders*, 73 Fed. Reg. 51,843, 51,845-46 (Sept. 5, 2008). The latter example particularly illustrates the difficulties raised by this scenario, as it involved attorneys working on behalf of different clients before the

Commission and WTO but who relied on information gleaned under the Commission APO to make arguments before the WTO panel. *Id.* at 51845-46. While the Commission found this breach to be "unintentional," it illustrates the difficulty that attorneys face in unseeing information accessed under a Commission APO while simultaneously representing a client on a similar matter where such information cannot be used. *Id.*

Further, the Commission publishes these case studies on APO breaches within annual reports specifically "to educate users" and provide guidance for practitioners in obtaining and handling confidential information under APOs. *See, e.g.,* 73 Fed. Reg. at 51,845. Thus, the Commission gave notice to parties, including Plaintiffs, regarding the APO risks that could arise from simultaneous representation in WTO proceedings, and Plaintiffs' assertion that they were unaware of such risks until the Secretary's letter of September 17, 2021, Exhibit 12 of Complaint, EDIS Doc. 752072, indicates that they have not done due diligence. Plaintiffs Br. at 17. Especially given their years of experience in practicing before the Commission, it would be reasonable to expect that they would avail themselves of this type of knowledge.

While Plaintiffs argue that the requirements of the APO would be adequate to address the risk of disclosure in the WTO matter, Plaintiffs Br. at 19, the Secretary's concern was precisely that the conditions provided at Commission Rule 206.17(b) were not adequate to address the situation posed by Curtis' applications: that attorneys working on similar matters across different fora, while being constrained by an APO in one of these, face untenable restrictions in their representation of clients. Indeed, this Court recognized the difficultly posed by this scenario in *Makita Corp. v. United States,* 17 C.I.T. 240, 819 F. Supp. 1099 (1993). The *Makita* decision involved an attorney that had represented different clients with different interests first before the Commission in a section 1337 proceeding, and later before Commerce in an antidumping duty

investigation, yet with both proceedings involving the pricing and sales of the same imports. *Id*. at 1102-1103. The Court found that the attorney's "participation in the {Commerce} investigations…would be constricted by the prior {Commission} section 1337 protective order," which would result in the attorney "being unable to give his complete best efforts" in the later Commerce proceeding. *Id*. at 1106-1107. The *Makita* decision thus supports that the scenario presented by Curtis' applications went beyond a mere question of whether the applicants would follow the APO and raised concerns about whether Custis' overlapping work was tenable without additional precautions.

Rather than acknowledging the difficulties posed by its work for different clients in different fora, or explaining any precautions put into place to prevent inadvertent use of confidential information, Curtis outright rejected that the situation posed any risk and argued that the Secretary's concern "makes little sense." Exhibit 6 of Complaint, EDIS Doc. 750354, at 4-5. Given this dismissal of the Secretary's concerns, it was not arbitrary for her to conclude that conditioning access to CBI on a certification that the individual attorney did not work on the WTO matter served a legitimate purpose to protect the confidentiality of information in the underlying proceeding.

Finally, Plaintiffs argue that their work on behalf of the government of China in the WTO matter was "legally and factually distinct" from safeguard proceedings before the Commission on behalf of LG. Plaintiffs Br. at 18; *see also* Exhibit 6 of Complaint, EDIS Doc. 750354, at 5. To the contrary, the legal issues addressed are inherently linked: the government of China has sought in the WTO to have the safeguard measure on CPSV products found invalid in its entirety, while LG has sought before the Commission to have the same safeguard measure on CPSV extended with respect to solar modules. In the Commission proceedings, the domestic

producers have argued –and must continue to show in order to prevail in the extension investigation—that there is a causal link between increased global imports of CSPV products and the domestic industry's condition, and that safeguard relief was and continues to be necessary. But, in the WTO proceeding, China claimed and argued that the United States failed to demonstrate a causal link. *See Panel Report*, at sections 7.3 through 7.68 (examining "{t}he causal link between increased imports and serious injury").

Contrary to Plaintiffs' assertions, Amended Complaint at paragraphs 51-52, its arguments in the Commission proceedings that the restrictions on imports of CSPV cells should be relaxed while those on modules should not be, is not aligned with China's arguments in the WTO dispute. To the contrary, in the WTO dispute, China advocated for the invalidation of the *entire* measure on imports of *all* CSPV products, and continues to advance that view. *See Panel Report*, at para. 3.1 (outlining China's requested Panel findings); *see also Notification of Appeal by China*, WT/DS56212.

Further, as noted in the Secretary's letter, these proceedings involve "much of the same record evidence" just as record information from the injury proceeding was carried forward in subsequent monitoring proceedings to inform the analysis thereunder. Exhibit 12 of Complaint, EDIS Doc. 752072, at 3. Notably, Plaintiffs themselves have requested that the confidential questionnaire responses and confidential reports for each of the past Commission proceedings on CSPV products be added to the record of the underlying CSPV extension proceeding. *See* Petitioners' Comments on Draft Questionnaires, at 1-2, EDIS Doc. 749389.[9] Given these overlapping facts and issues, Plaintiffs' attempt to distinguish them is unavailing.

---

[9] Other firms have similarly requested that confidential materials from prior CSPV proceedings be added to the record of the extension proceeding. *See* Comments on Draft Questionnaires by Solar Energy Industries Association and REC Americas, Inc., at pg. 2, EDIS Doc. 749375.

Thus, the Secretary identified "legitimate concerns" posed by Curtis' APO applications in the underlying proceeding.  Given that Curtis declined to identify any precautions taken on its part to address these concerns, the Secretary did not act in an arbitrary and capricious manner by conditioning APO access on a certification by the individual attorney or consultant that they were not involved in the WTO matter.

### 3.  The Secretary's Condition on APO Access is Not Overly Burdensome

In addressing the legitimate concerns posed by Curtis' APO applications in the underlying *CSPV* safeguard extension investigation, the Secretary also tailored the conditions imposed so as not to be overly burdensome and frustrate entirely LG's selection of counsel. Thus, the Secretary granted APO applications for four attorneys from Curtis who certified to no involvement in the WTO matter.  Exhibit 10 of Complaint, EDIS Doc. 751769.  These attorneys collectively have over 90 years of experience in trade proceedings, including safeguard proceedings.  *See* Staff Biographies at www.curtis.com (last visited October 3, 2021).  Moreover, three of the four attorneys who were granted full access to the CBI under the APO were on the APO in both the original safeguard investigation and in the monitoring investigation conducted by the Commission in 2019.  *See* Curtis APO applications and APO service list from original investigation (EDIS Doc No. 612712); and Curtis APO applications and APO service list from monitoring investigation (EDIS Doc No. 684955)  These attorneys may thus access confidential information under the APO in representing LG's interest in the *CSPV* extension proceeding before the Commission.  Indeed, this Court has recognized that alleged hardships suffered by a client when APO access for certain attorneys are scrutinized may be balanced when access is granted to other attorneys and personnel at the same firm.  *Makita*, 819 F. Supp. at 1103 (noting

that Commerce granted APO access to 14 personnel from firm even while delaying decision on another attorney with overlapping representations across different matters).

Moreover, even those four attorneys who were not granted access to CBI under the APO because they could not certify as to no involvement in the WTO matter, may still participate in the extension investigation on behalf of Plaintiffs. Indeed, these individuals have been added to the public service list and may contribute to legal arguments and to the public portions of briefs. They may also fully participate and represent Plaintiffs at the Commission hearing, which is scheduled to be totally public.[10]

Thus, the Secretary's conditions on APO access for Curtis are not overly burdensome. They allow access to confidential information for numerous experienced attorneys from the firm, and those not granted APO access may continue to participate in public portions of the proceeding.

## V. CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' Motion for Summary Judgment and affirm the Secretary's decision in all respects.

Respectfully submitted,

Dominic L. Bianchi
General Counsel

*/s/ Andrea C. Casson*
Andrea C. Casson
Assistant General Counsel for Litigation

---

[10] We further note that LG is co-petitioner with other domestic module producers represented by counsel who have APO access, and who are arguing the same facts and seeking the same remedy as LG. *See Petition to Extend Global Safeguard Relief*, filed on August 4, 2021 by Hanwha Q Cells USA, Inc. (represented by Arent Fox), LG Electronics USA (represented by Curtis Mallet), and Mission Solar Energy (represented by Arent Fox), EDIS Doc. 748708.

U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-3105
Facsimile: (202) 205-3111


/s/_Brian R. Soiset_____
Brian R. Soiset
John D. Henderson
David A. J. Goldfine
Alexandra M. Felchlin
Attorney–Advisors
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
brian.soiset@usitc.gov
Telephone: (202) 205-3399
john.henderson@usitc.gov
Telephone: (202) 205-2130
david.goldfine@usitc.gov
Telephone:  (202) 205-5452
alexandra.felchlin@usitc.gov
Telephone:  (202) 205-3061
Facsimile: (202) 205-3111

*Attorneys for Defendants*

Dated: October 4, 2021

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedures 2(B)(1) and (2), I hereby certify that the attached

**DEFENDANT UNITED STATES' MEMORANDUM IN OPPOSITION TO**

**PLAINTIFF'S MOTIONS FOR JUDGMENT ON THE AGENCY RECORD** contains

10,778 words, according to the word-count function of the word processing system used to

prepare this brief (Microsoft Office 365 ProPlus).


Dated: October 4, 2021                    /s/ *Brian R. Soiset*
                                               Brian R. Soiset
                                                 Attorney-Advisor
                                                 Office of the General Counsel
                                                 U.S. International Trade Commission
                                                 500 E Street, SW
                                                 Washington, DC 20436
                                                 Telephone: (202) 205-3399
                                                 Facsimile: (202) 205-3111
                                                 brian.soiset@usitc.gov

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| LG ELECTRONICS USA, INC. and<br>LG ELECTRONICS, INC.,<br><br>                        Plaintiffs,<br><br>   v.<br><br>UNITED STATES, THE UNITED STATES<br>INTERNATIONAL TRADE COMMISSION and<br>SECRETARY LISA R. BARTON IN THEIR<br>PROFESSIONAL CAPACITY AS THE<br>SECRETARY OF THE UNITED STATES<br>INTERNATIONAL TRADE COMMISSION,<br><br>                        Defendants. | Court No. 21-00520 |

<u>ORDER</u>

Upon consideration of Plaintiffs' Motion for Declaratory Judgment, or In the Alternative, Summary Judgment; Defendants' Memorandum in Opposition; and all other pertinent papers, it is hereby

ORDERED that Plaintiffs' motion is denied in its entirety and, it is further

ORDERED that judgment is entered in favor of Defendants.

_____
JUDGE

Date: _____, 2021
      New York, New York