## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **LG ELECTRONICS USA, INC., and LG ELECTRONICS, INC.** | ) ) ) |
|  | ) |
| **Plaintiffs,** | ) ) |
|  | ) |
| **v.** | ) ) |
|  | ) |
| **UNITED STATES, THE UNITED STATES INTERNATIONAL TRADE COMMISSION and SECRETARY LISA R. BARTON IN HER PROFESSIONAL CAPACITY AS THE SECRETARY OF THE UNITED STATES INTERNATIONAL TRADE COMMISSION** | ) ) ) ) ) ) ) |
|  | ) |
| **Defendants** | ) ) |

**Court No. 21-00520**

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR DECLARATORY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

/s/ Daniel L. Porter
Daniel L. Porter
James P. Durling
James C. Beaty
1717 Pennsylvania Avenue, N.W. 13th Floor
Washington, D.C.  20006
(202) 452-1717

/s/ Jonathan Walsh
Jonathan Walsh
Nathaniel Ament-Stone
101 Park Avenue, 36th Floor
New York, New York 10178
(212) 696-6000

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION AND SUMMARY OF ARGUMENT .................................................... 1

I.  THIS COURT HAS JURISDICTION ................................................................ 2

    A.  This Court Has Jurisdiction Pursuant to 28 U.S.C. §1581(i) ...................... 3

    B.  Contrary to the Commission's Arguments, the Commission's Denial of APO Access Is a Final Decision, and Plaintiffs Have Stated a Claim That Is Ripe and Justiciable ................................................................. 5

        1.  Plaintiffs have no further chance to appeal the Commission's decision. ......................................................................................... 6

        2.  The Commission's cited attorney disqualification cases are inapposite. ...................................................................................... 8

        3.  The Commission's cited international-trade cases are inapposite. ............. 9

II.  THE COMMISSION'S DENIAL OF APO ACCESS WAS ARBITRARY, CAPRICIOUS, AND WITHOUT ANY LAWFUL BASIS ................................. 12

    A.  The Commission Has Mischaracterized Its Degree Of Discretion In Deciding Whether To Grant APO Access To Authorized Applicants ....... 12

    B.  The Secretary's Denial Was Premised on Mistaken Assumptions ............. 17

    C.  The Commission's Argument That Plaintiffs Have Not Suffered Harm Must Be Rejected ............................................................................. 24

III.  THIS COURT SHOULD EXERCISE ITS EQUITABLE POWERS TO DO THE RIGHT THING ............................................................................... 26

CONCLUSION ............................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Cmty. Broadcasting of Boston, Inc. v. FCC,*
   546 F.2d 1022 (D.C. Cir. 1976) ............................................................................... 9

*Corus Grp. PLC v. Bush,*
   26 CIT 937, 217 F. Supp. 2d 1347, 1350-51 (2002) ............................................... 2

*Corus Grp. PLC v. ITC,*
   352 F.3d 1351, 1358 (Fed. Cir. 2003) .................................................................... 5

*Darby v. Cisneros,*
   509 U.S. 137, 146 (1993) ......................................................................................... 7

*Franklin v. Massachusetts,*
   505 U.S. 788, 797 (1992) ........................................................................................ 7

*Kisor v. Wilkie,*
   139 S. Ct. 2400, 2415 (2019) ......................................................................... 15, 16

*Koyo Seiko Co. v. United States,*
   13 CIT 461, 715 F. Supp. 1097 (1989) .................................................................. 11

*Law Offices of Seymour M. Chase, P.C. v. FCC,*
   843 F.2d 517 (D.C. Cir. 1988) ............................................................................... 9

*Makita v. United States,*
   17 CIT 240, 819 F. Supp. 1099 (1993) ............................................. 24, 25, 26, 28

*Maple Leaf Fish Co. v. United States,*
   5 CIT 275, 277, 566 F. Supp. 899, 901-02 (1983) ................................................. 5

*Maple Leaf Fish Co. v. United States,*
   762 F.2d 86 (Fed. Cir. 1985) .................................................................................. 5

*NSK Ltd. v. United States,*
   28 CIT 1600, 350 F. Supp. 2d 1128 (2004) .................................................... 10, 11

*Richardson–Merrell, Inc. v. Koller,*
   472 U.S. 424 (1985) ................................................................................................ 9

*Tianjin Magnesium Int'l Co., Ltd. v. United States,*
   32 CIT 1, 533 F. Supp. 2d 1327 (2008) .......................................................... 10, 11

*Tokyo Kikai Seisakusho, Ltd. v. United States,*
   29 CIT 1280, 403 F. Supp. 2d 1287 (2005) .......................................................... 10

*U.S. Ass'n of Importers of Textiles & Apparel v. United States,*
   413 F.3d 1344 (Fed. Cir. 2005) ............................................................................. 11

*United Steel & Fasteners, Inc. v. United States,*
   947 F.3d 794, 801-02 (Fed. Cir. 2020) ........................................................... 15, 16

*Universal Steel Prods. v. United States*,
  495 F. Supp. 3d 1336, 1344 (Ct. Int'l Trade 2021) ................................................ 7

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
  716 F.3d 1370, 1371 (Fed. Cir. 2013) ................................................ 4


**Statutes**

19 U.S.C. §1677e ................................................................................ 22

19 U.S.C. §1677f ........................................................................... 25, 26

19 U.S.C. §1677f(c)(2) ......................................................................... 5

28 U.S.C. §1581(c) ............................................................................. 21

28 U.S.C. §1581(f) ............................................................................... 3

28 U.S.C. §1581(i) ...................................................................... passim

28 U.S.C. §1581(i)(1)(D) ................................................................. 2, 10

28 U.S.C. §1581(i)(2) ............................................................................ 2

28 U.S.C. §1581(j) ................................................................................ 2

28 U.S.C. §2636(f) ................................................................................ 5


**Regulations**

19 C.F.R. §206.17(a) ......................................................... 16, 17, 18, 19

19 C.F.R. §206.17(a)(1) ....................................................... 10, 14, 15

19 C.F.R. §206.17(a)(3)(i)(A) ............................................................. 19

19 C.F.R. §206.17(a)(3)(ii) ................................................................. 14

19 C.F.R. §206.17(b) .................................................................. passim


**Other administrative authority**

H. Rpt. No. 103-316, 1994 WL 16137731, 1994 U.S.C.C.A.N. 4040, at *4264 (Dec. 8, 1994) ... 4

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case is fundamentally about protecting the integrity of the agency proceeding. Congress years ago rejected the case-by-case approach to administrative protective order ("APO") access, and instead directed the Commission to grant APO access in every case. All "authorized applicants" should have access.  And the Commission responded by drafting regulations that used the mandatory "shall" to confirm that all timely applications from proper "authorized applicants" would be granted APO access.  The Commission has discretion to impose conditions.  And the Commission has imposed such conditions on other categories of "authorized applicants" other than outside counsel.

However. the Commission has never before sought to deny any APO access to outside counsel.  The Commission here essentially seeks to penalize Plaintiffs because their attorneys could not read the Commission's mind, and anticipate and address Commission concerns that were never clearly articulated.  This denial of APO access is both wrong as a matter of law and premised upon factually incorrect assumptions and therefore should be reviewed and addressed promptly by this Court.  Moreover, the Commission's decision denies Plaintiffs their choice of counsel.

In the interest of a prompt resolution, we are addressing both the Defendants' Motion to Dismiss and their Opposition to Plaintiffs' motions in this single brief.  The Commission has made a final decision on the issue of APO access for the four specific attorneys at issue.  APO decisions are individual to each authorized applicant.  A law firm does not have APO access as a whole.  Individual attorneys and other parties have access.

Indeed, this decision is so final that the Commission insists on defending this decision in the face of uncontested facts showing the premise for denial is simply not true. Accordingly, the Court has jurisdiction under 28 U.S.C. §1581(i) to hear this appeal of a final decision about APO access.

## I.   THIS COURT HAS JURISDICTION

As Plaintiffs set forth in their opening brief, 28 U.S.C. §1581(i) grants exclusive jurisdiction to this Court to review Commission actions pertaining to, *inter alia*, "administration and enforcement with respect to" tariffs, duties, fees, embargoes, and other quantitative restrictions on imports. 28 U.S.C. §1581(i)(1)(D). The statute specifies two exceptions to this broad jurisdictional scope, neither of which applies here. *See* 28 U.S.C. §§1581(i)(2), 1581(j). Where, as here, the Commission has denied APO access to an interested party's chosen counsel in such a proceeding and the interested party challenges that denial in court, its claim "clearly raises issues regarding whether" safeguard laws "are properly administered" by the Commission, and so Section 1581(i)(1)(D) jurisdiction attaches. *See Corus Grp. PLC v. Bush*, 26 CIT 937, 217 F. Supp. 2d 1347, 1350-51 (2002) (holding there was §1581(i) jurisdiction to hear procedural aspect of safeguard proceeding).

In its opposition brief, the Commission argues that this Court does not have jurisdiction to hear this case. And then, in the alternative, the Commission argues even if this Court has jurisdiction, it should not hear this appeal because, allegedly, the

Commission's decision is neither final nor ripe. As detailed below, both of these opposition arguments can be easily rejected.

### A.      This Court Has Jurisdiction Pursuant to 28 U.S.C. §1581(i)

The Commission does not and cannot deny that, as set forth in Plaintiffs' opening brief: (1) 28 U.S.C. §1581(f) permits interested parties in antidumping/countervailing duty ("AD-CVD") proceedings to seek judicial review of the Commission's disclosure of confidential information under an APO; (2) Congress and the Commission explicitly intended for APO procedures in safeguard proceedings to mirror those in AD-CVD proceedings, which are subject to judicial review; and (3) there are only two statutory carve-outs from Section 1581(i)'s "broad residual" grant of jurisdiction, neither of which applies here.

The very legislative and regulatory history cited by the Commission, *see* Def. Opp., ECF No. 28, at 19-23, strongly supports Plaintiffs' interpretation: that Congress first shifted from a permissive "may" to a mandatory "shall" framework for disclosure of confidential information to interested parties pursuant to APOs in the Title VII context in the 1988 Act, and then in 1994 required the Commission to promulgate regulations providing for similar APO procedures in safeguard proceedings. Congress intended that interested parties in safeguard proceedings should have the same access to CBI as their counterparts in AD-CVD proceedings. As the Statement of Administrative Action ("SAA") indicates:

> Section 301(b) of the bill [Uruguay Round Agreements Act of 1994] also amends section 202 of the Trade Act of 1974 to **require the ITC to promulgate regulations to provide for disclosure of confidential business information, under an administrative protective order, to authorized**

> **representatives of interested parties** . . . It is expected that these
> regulations will generally parallel the appropriate provisions of section 777
> of the Tariff Act of 1930 and the regulations issued under that section.

H. Rpt. No. 103-316, 1994 WL 16137731, 1994 U.S.C.C.A.N. 4040, at *4264 (Dec. 8,

1994) (emphasis added).  As this Court knows well, the SAA is "recognized by Congress

as an authoritative expression concerning the interpretation and application" of the new

legislation.  *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1371

(Fed. Cir. 2013).

There is no indication in the relevant legislative history, regulations, or case law,

and the Commission has offered no reason to infer, that Congress intended to permit

judicial review of APO access in the AD-CVD context, but not in the safeguard context

intended to parallel its AD-CVD counterpart.  Moreover, in the safeguard cases where

plaintiffs have invoked Section 1581(i) as the jurisdictional basis, courts have rejected

arguments by the Commission that they lacked jurisdiction.  *See Corus Grp. PLC v. ITC*,

352 F.3d 1351, 1358 (Fed. Cir. 2003) (Court had §1581 jurisdiction to hear challenge to

ITC's voting procedures for safeguard injury determination); *Maple Leaf Fish Co. v.

United States*, 5 CIT 275, 277, 566 F. Supp. 899, 901-02 (1983) (noting that "preclusion

of judicial review will not be lightly inferred," that "there is no express statute prohibiting

review," and that challenged ITC actions related to duties), *aff'd*, 762 F.2d 86 (Fed. Cir.

1985).

The Commission's arguments to distinguish this body of case law finding

jurisdiction under Section 1581(i) for safeguard cases relies primarily on the fact that in

those other cases the challenge came at the end. Mot. to Dismiss, ECF No. 27, at 6-8.  We

address these finality arguments in the next section.  But for jurisdiction, we note that Congress fully intended the court to supervise erroneous APO decisions at the time.  When Congress granted explicit judicial review over Title VII APO decisions, it also provided for (as the Commission itself acknowledges) interlocutory court appeal to challenge the agency APO decision.  19 U.S.C. §1677f(c)(2); *see also* 28 U.S.C. §2636(f).  This statutory provision, and the clear Congressional intent to have safeguard APO procedures track those for Title VII, cannot be reconciled with the Commission's argument that jurisdiction will only arise at the end of the proceeding.  Perhaps this is true with regard to other interlocutory procedural decisions, but not with regard to the APO decisions that are so fundamental to a fair process.

**B.**       **Contrary to the Commission's Arguments, the Commission's Denial of APO Access Is a Final Decision, and Plaintiffs Have Stated a Claim That Is Ripe and Justiciable**

The Commission argues that its denial of APO access to the four Curtis attorneys chosen by LG to represent its interests is not a final agency action subject to judicial review pursuant to the Administrative Procedure Act, and uses its cramped view of "finality" to support arguments that (i) this Court lacks jurisdiction, (ii) Plaintiffs' claim is not yet ripe or justiciable, and (iii) Plaintiffs fail to state a claim upon which relief can be granted.  Mot. to Dismiss at 9-18.  These various arguments all turn in part or in whole on the finality question.  Since the Commission has made a final decision denying APO access, these Commission arguments should be rejected and this Court should hear the appeal.

1.    **Plaintiffs have no further chance to appeal the Commission's decision.**

As the Commission appears to concede, Mot. to Dismiss 17, Plaintiffs have shown there are no other adequate remedies for their injury, and thus implicitly recognized that the agency decision is final.  "When an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule, the agency action is 'final for the purposes of this section' and therefore 'subject to judicial review.'"  *Darby v. Cisneros*, 509 U.S. 137, 146 (1993).  The Supreme Court has articulated a two-pronged test for whether agency actions are "final."  The "core questions" are "whether the agency has completed its decision-making process, and whether the result of that process is one that will directly affect the parties."  *Universal Steel Prods. v. United States*, 495 F. Supp. 3d 1336, 1344 (Ct. Int'l Trade 2021) (citing *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992)).

Both conditions are met here.  The Commission's action on the APO access for these four attorneys is final.  The Commission had not identified any other administrative steps that plaintiffs could take.  So unlike cases such as *Franklin*, where the President still had an opportunity to alter the Secretary of Commerce's recommendation regarding apportionment of U.S. House seats, this action is final.  There are no steps in the Commission's APO process to be pursued.  The Commission's denial of the APO applications submitted by Plaintiffs' chosen counsel is final and not subject to review by another agency or appeal within the Commission.  Indeed, the finality is confirmed by the Commission refusal to reconsider its decision, even in the face of new facts showing the

original decision was deeply flawed and arbitrary and capricious. And the final decision is already directly affecting Plaintiffs, by denying Plaintiffs access to their attorney of choice to defend their interests in this proceeding.

The Commission also argues that Section 1581(i) does not permit judicial review of its decisions regarding the disclosure of confidential information in safeguard proceedings, since (in the Commission's view) these decisions are not "final" agency decisions. Mot. to Dismiss 9-12. If correct, this argument would fly in the face of the statute as a whole. Congress and the Commission designed the APO process to allow access subject to safeguards, and they explicitly modeled the applicable APO regulations for safeguard proceedings on those for AD-CVD proceedings, which do permit judicial review. Yet the Commission now argues there is no way for an interested party in a safeguard proceeding to challenge the denial of APO access, prior to a complete Commission adjudication of the safeguard proceeding.

This is a remarkable and counterintuitive proposition. The very existence of the APO process shows Congress's concerns that either (a) improper disclosure of CBI or (b) lack of the required access to CBI could gravely harm a party's interests, and that the Commission cannot simply "un-ring" either of these metaphorical bells after a full merits resolution in the underlying proceeding. APO access—broad access, but with protections—is critical to ensuring a fair process. That is why Congress mandated APO access, eliminating the previous process of allowing the Commission to pick and choose when to provide access. Indeed, the Commission brief notes this point. Def. Opp. 19-23. And that is why Congress provided judicial review about APO decision to protect the

integrity of the process.  The Commission has offered no interpretive basis to distinguish between (a) a party's right to prevent improper disclosure of its CBI and (b) a party's right of access to properly disclosed CBI.  Instead, the Commission breezily asserts that its decisions with respect to CBI and APO access are not final agency actions subject to judicial review.  This view may be convenient for an agency that wants to avoid the need to defend its APO decision, but this view flies in the face of the statutory scheme to grant judicial review of APO decisions and protect the integrity of the process at the time—when it still matters.

### 2.     The Commission's cited attorney disqualification cases are inapposite.

In its motion to dismiss, the Commission cites irrelevant case law regarding disqualification of counsel—whether by a district court, *see Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424 (1985), or the FCC upon another party's disqualification motion in an agency proceeding, *see Law Offices of Seymour M. Chase, P.C. v. FCC*, 843 F.2d 517 (D.C. Cir. 1988); *Cmty. Broadcasting of Boston, Inc. v. FCC*, 546 F.2d 1022 (D.C. Cir. 1976).  Mot. to Dismiss 13.  In the underlying Commission proceeding, however, no interested party sought to disqualify the four Curtis attorneys as LG's counsel, nor did any party oppose those attorneys' APO applications.  These cases thus do not apply.

The Secretary's decision was governed by Commission regulations specific to the APO process—namely, 19 C.F.R. §206.17(a)(1)—not by any body of law regarding attorney disqualification.  The only question, then, is whether the Commission's denial of APO access to an interested party's chosen counsel in a safeguard proceeding constitutes

an agency action regarding the "administration" of the proceeding; if so, the final decision is reviewable under 28 U.S.C. §1581(i)(1)(D).

### 3. The Commission's cited international-trade cases are inapposite.

The Commission also cites a handful of international-trade cases where the Court held that there was no Section 1581(i) jurisdiction to review certain interim procedural decisions which (in any event), but these cases did <u>not</u> affect an interested party's ability to participate in the underlying Commission proceeding. *See Tianjin Magnesium Int'l Co., Ltd. v. United States*, 32 CIT 1, 533 F. Supp. 2d 1327 (2008) (plaintiff attempted to halt ongoing administrative review of antidumping order); *NSK Ltd. v. United States*, 28 CIT 1600, 350 F. Supp. 2d 1128 (2004) (same); *Tokyo Kikai Seisakusho, Ltd. v. United States*, 29 CIT 1280, 403 F. Supp. 2d 1287 (2005) (plaintiff challenged "changed circumstances" review, where no duty was presently in effect); *U.S. Ass'n of Importers of Textiles & Apparel v. United States*, 413 F.3d 1344 (Fed. Cir. 2005) (plaintiff challenged committee's consideration of "threat of market disruption" factor as part of its evaluation process, prior to any merits decision); *Koyo Seiko Co. v. United States*, 13 CIT 461, 715 F. Supp. 1097 (1989) (plaintiffs challenged ITA's denial of request for additional time for comment).

Not one of these cases cited by the Commission concerned either APO access, any other disclosure of confidential information, or an interested party's representation by counsel in a Commission proceeding. And in such cases, "business uncertainty" or "disruption of business activities" while awaiting the ultimate resolution of the proceeding did not substitute for a requirement that the plaintiff demonstrate actual injury caused by agency action. *See Tianjin Magnesium*, 32 CIT at 21 n.38; *U.S. Association of Importers*,

413 F.3d at 1350; *see also NSK*, 28 CIT at 1607 (distinguishing "instances where residual jurisdiction has been found for interim decisions . . . because plaintiffs would have been denied relief if required to wait for Commerce's final determination prior to seeking judicial review"). The Commission's citation to these cases and its finality arguments generally imply that LG should wait until the conclusion of the underlying safeguard extension proceeding. But this argument has several fundamental problems.

First, the Commission seeks to conduct a flawed proceeding, in which LG cannot adequately be represented by its chosen counsel, due to the Commission's arbitrary refusal to grant that counsel APO access with any appropriate conditions the Secretary might determine are needed. The whole point of Congress eliminating the Commission's case-by-case decision about APO access was the ensure the broad access, with appropriate safeguards, to guarantee the fair process the Commission now ignores.

Second, if the Commission's finality argument is to be taken seriously, then Plaintiffs would have a right to appeal the Commission's final determination on safeguard extensions for the sole purpose of seeking APO access for Plaintiffs' chosen counsel, and this appeal would require the Commission to begin its investigation anew. This suggestion defies common sense and ignores Congress's creation of "broad residual" Section 1581(i) jurisdiction for this Court to review the "administration" of safeguard and other trade law proceedings. In the Title VII cases cited by the Commission, a contemplated or potential future harm can be undone following a final agency determination. Title VII cases in particular allow for the recalculation of duties and possible refunds, if the appeal of final results is successful. In sharp contrast, the mandatory APO access for interested parties'

counsel, envisioned by Congress and guaranteed by Commission regulations, cannot be recreated after the fact.  APO access at the time is precisely what allows those parties to participate meaningfully in Commission proceedings.

Third, the Commission's argument is to wait for something that will never come. In fact, the Commission has revealed its actual view, that Commission decisions in safeguard extension proceedings are <u>completely unreviewable</u>.  The Commission writes: "Even the Commission's ultimate determination on the extension criteria will not be sufficient to establish jurisdiction under the established case law. . . . *A fortiari* {*sic*}, the Secretary's discretionary procedural decision at this stage of the Commission's investigation cannot be said to have adverse consequences for a yet-to-be-made Commission determination . . ."  Mot. to Dismiss 11.  So the Commission's true position is that existing law provides no avenue whatsoever for judicial review of an interested party's rights in a safeguard extension proceeding.  But this view ignores  the "broad residual" jurisdiction conferred by Section 1581(i), and clear regulatory history establishing that Congress and the Commission intended for the APO regulations applied in safeguard proceedings to match their counterpart AD-CVD regulations that include timely judicial review.    This imagined *carte blanche* for the Secretary to disclose or withhold CBI in her sole discretion with no practical possibility of judicial review cannot be, and plainly is not, the law.

## II.   THE COMMISSION'S DENIAL OF APO ACCESS WAS ARBITRARY, CAPRICIOUS, AND WITHOUT ANY LAWFUL BASIS

Plaintiffs have argued the Commission (1) ignored the mandatory language of its own regulation requiring APO access for any timely "authorized applicant," and (2) the denial was arbitrary and capricious and based on demonstrably incorrect facts.   The Commission now tries to create broad discretion that simply cannot be reconciled with the actual language of the regulation.   And the Commission also seeks to justify its decision by putting on blinders and ignoring the actual undisputed facts of this case.   For the reasons discussed below, these Commission arguments should be rejected.

### A.   The Commission Has Mischaracterized Its Degree Of Discretion In Deciding Whether To Grant APO Access To Authorized Applicants

The Commission argues that it has considerable discretion, Def. Opp. 18-27, but this argument is built on two seriously flawed premises.   The Commission largely ignores or mischaracterizes the text of its regulation and the structure of that regulation.

It is quite telling that that the Commission largely ignores the text of its regulation, and focused instead on "historical context and legislative history" and "history and development." Def. Opp. 18, 21.   The Commission seems to forget the starting point must be the text itself.   The text of the regulation, 19 C.F.R. §206.17(a)(1), on its face specifies that "upon receipt" of (1) a timely application by (2) an authorized applicant, the "Secretary shall make available" information pursuant to the APO.[1]   In this case, the denied

---

[1] Other than requiring the application be timely and an "authorized applicant," the only other requirement in the regulation is that the "authorized applicant" not be involved in "competitive decision-making" for an interested party that is a party to the proceeding. (continued…)

applications were timely and were by authorized applicants, points the Commission has not disputed.  Since the only conditions in the regulation had both been met the Secretary "shall" provide access under APO.  Although "shall" is quite clear on its face, the regulation removes any possible double by juxtaposing the use of the mandatory "shall" in 19 C.F.R. §206.17(a)(1) with the permissive "may" in 19 C.F.R. §206.17(b), when describing the Commission's authority to add conditions to the APO.  The Commission does not dispute any of these points.

An unambiguous regulatory command must be followed.  The courts have roundly held that an agency must follow its unambiguous regulations.  As the Supreme Court recently noted, courts "should not afford *Auer* deference unless the regulation is genuinely ambiguous. . . . {I}f there is only one reasonable construction of a regulation—then a court has no business deferring to any other reading, no matter how much the agency insists it would make more sense."  *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (citing other Supreme Court decisions).  And following *Kisor*, the Federal Circuit recently rejected an agency interpretation as "not 'within the bounds of reasonable interpretation,'" and held that "{a}ffording Commerce deference here would permit Commerce 'under the guise of interpreting a regulation, to create *de facto* a new regulation.'"  *United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794, 801-02 (Fed. Cir. 2020) (citing *Kisor*, 139 S. Ct. at 2415-16).  This Court faces the same situation here: an unambiguous regulation that the

---

19 C.F.R. §206.17(a)(3)(ii).  As the ITC APO application makes clear, this issue of "competitive decision-making" only arises for in-house counsel.  Box 1—"An attorney, excepting in house corporate counsel"—does not include this qualifying language.  Accordingly, any possible "competitive decision-making" is not an issue here.

agency has apparently decided it does not wish to follow.  Like in *Kisor* and *United Steel & Fasteners*, this Court should reject agency arguments that actually seek to create a new regulation.

Beyond ignoring the unambiguous text of its regulation, the Commission also mischaracterizes the structure of the regulation.  The regulation explicitly sets out a two-step process—(1) the process of applying for access to information under the APO under 19 C.F.R. §206.17(a) and then (2) the specific terms under which that APO access will operate under 19 C.F.R. §206.17(b).  The first step addresses the procedures and uses the mandatory "shall" to make clear the Secretary must grant access to all timely "authorized applicants."  The second step addresses the precise form of that APO, specifying certain conditions and uses the discretionary "may" to confirm the Secretary can choose to add other conditions.   Since the two-part structure does not support its argument, the Commission tries to confuse this clear delineation of what is mandatory and what is discretionary.

In some places the Commission tries to create a three-step process, arguing that step one is to "establish" the APO in the abstract before "granting" applications for access and any conditions that might be imposed.  Def. Opp. 20-23.  But there are two problems with this argument.  First, the regulation on its face contemplates the creation of an APO for each individual "authorized applicant."  There is no generic APO; there are only a series of APOs for each "authorized applicant."  The Commission APO application confirms this point from the regulation.  The Commission may choose to organize multiple APOs under different law firms on its APO service list, but that does not change the fact that each APO

- 14 -

is individual to each particular "authorized applicant."  Second, the history recounted by the Commission does not change the terms of its regulation or its APO practice.  The need to make APO disclosure mandatory actually reinforces Plaintiffs' argument that granting APO access to all "authorized applicants" is mandatory.  The delineation between who has access and who does not have access is made by distinguishing "authorized applicants" from other parties.

Perhaps recognizing the limits of its argument for a three-step process, in other places the Commission blurs the distinction between the right to access under 19 C.F.R. §206.17(a) and the conditions that may accompany that access under 19 C.F.R. §206.17(b).  Def. Opp. 23-27.  The issue is not whether the Commission has any discretion in general.  Rather, the issue is what discretion does the Commission have at each of two distinct stages in the process.  The Commission argument for case-by-case assessment reinforces the point that each APO for each "authorized applicant" can be tailored to address any specific concerns or risks.  The Commission's discussion reinforces why lawyers who practice before the Commission and are subject to "disbarment from practice before the agency" are granted access as "authorized applicants."  Def. Opp. 24 (citing S.Rpt.).  The Commission discussion also highlights the distinct issues for in-house counsel, but that is why in-house counsel are treated differently in the APO application process.  Indeed, the Senate Report cited repeatedly by the Commission embraces the very distinction that Plaintiffs draw—and that the Commission itself embodied in its regulations.  The "considerable discretion" occurs in "determining how to frame and administer these orders,"  Def. Opp. 24 (citing S. Rpt.)—in other words, as part of how the

APO is framed and what conditions it includes as described in 19 C.F.R. §206.17(b).  The Commission wrote its regulation.  And when doing so, the Commission gave itself little discretion under 19 C.F.R. §206.17(a) and broad discretion under 19 C.F.R. §206.17(b).

The Commission argues the discretion applies to both of the two steps, Def. Opp. 25-26, but its regulation and practice belie the argument now being presented to the Court. Whatever background might have informed the history of Title VII APO access discussed by the Commission, when the Commission drafted its regulation it left itself very limited discretion under 19 C.F.R. §206.17(a) and gave itself broad discretion only under 19 C.F.R. §206.17(b).  The Commission did not assert discretion by inserting a term like "normally," as the Department of Commerce did in its parallel regulation.  Def. Opp. 23, n.6.  That the Commission might now wish it had drafted the regulation differently does not give it the authority to rewrite its regulatory to say what it now wishes it said.

The Commission argues that the conditions under 19 C.F.R. §206.17(b) are also part of the application under 19 C.F.R. §206.17(a), Def. Opp. 27, but this argument does not apply here.  We urge the Court to review the APO application at issue.  It shows that the conditions embedded in the application apply to only four out of five of the regulatory categories of "authorized applicants."   The regulatory category "attorney," 19 C.F.R. §206.17(a)(3)(i)(A), is broken down into (1) an "attorney, excepting in-house corporate counsel" and (2) an "in-house corporate counsel."  The first category—"attorney, excepting in-house corporate counsel"—has none of the conditions found for the other categories.  When read together, the regulation and the APO application make clear that an attorney who is not an in-house counsel is not subject to any additional conditions.   Even

if the Commission can permissibly add conditions to the regulatory categories of "authorized applicants," the Commission has not done so for outside counsel. Moreover, any such discretion to do so in general just underscores Plaintiffs' point in this case that no such conditions were included in the APO at issue.

The Commission also argues that judicial review implies discretion, Def. Opp. 26, but this argument also misses the point. Judicial review is important whenever there needs to be a check on whether the agency is following its regulations. Such review might involve confirming whether the agency followed its regulations and took appropriate action when certain conditions have been met. That is the case here. Plaintiffs are "qualified applicants" who filed timely applications for APO access under 19 C.F.R. §206.17(a). That access should have been granted. The standard APO form did not impose any addition conditions on an "attorney, excluding in-house corporate counsel." Any discretion the Commission has under 19 C.F.R. §206.17(b) does not apply here because the Commission has not sought to impose any such conditions. The Commission never required a certification of any other facts, like those required for other categories of "authorized applicants." Instead, the Commission simply denied the APO outright and therefore violated its own regulation.

### B.   The Secretary's Denial Was Premised on Mistaken Assumptions

In Plaintiffs' opening brief, Plaintiffs also made the factual argument that in this case, the Commission denied APO access to several "authorized applicants" based on two factual assumptions that were not true. Plaintiffs first demonstrated that the Commission's

denial decision was premised upon the mistaken assumption that the Curtis attorneys continued to represent the Government of China in the WTO safeguard proceedings. Plaintiffs also demonstrated that any concern about risk of potential disclosure of CBI could be adequately addressed by adding safeguards to the APO, as its done under existing APO procedures.

The Commission does not dispute any of the underlying facts demonstrating that the Commission's denial was premised upon an assumption that is not true. Specifically, the Commission does not dispute at all the facts that (a) Curtis's assistance for the Government of China was limited, and concluded as of September 2, 2021 (with the publication of the WTO Panel report) (see Porter Affidavit, ECF No. 23-2, Exhibit 14 at ¶¶ 24-25), (b) Curtis has not been retained for any additional work by the Government of China regarding future WTO proceedings on this matter (*id*.), and (c) it is certain that Curtis will not work with the Government of China in the future for this WTO case. Am. Compl., ECF No. 16, at ¶ 46. Instead, the Commission attempts to argue that this Court should ignore these undisputed facts because supposedly such undisputed facts "are not on the agency record." Def. Opp. 28.

This Commission argument should be rejected. . First, this case is not an appeal upon the agency record. Plaintiffs are seeking judicial review under 28 U.S.C. §1581(i), not 28 U.S.C. §1581(c). Indeed, while all parties have referred and submitted various documents, no official administrative record has been submitted to the court. Accordingly, this Court can take into account undisputed facts that are presented to this Court during this proceeding.

- 18 -

Second, the above undisputed facts were presented to the Commission prior to the Commission's denial of the individual APO applications.  The above undisputed facts were set forth in Mr. Porter's Affidavit attached to Plaintiffs' Complaint filed on September 16, 2021.  Moreover, counsel for Plaintiffs sent a courtesy copy of all court papers, including the Porter Affidavit, directly to Secretary Barton the night of Thursday, September 16, 2021.  (*See* Appx1)  Secretary Barton did not render her denial decision until the afternoon of Friday, September 17, 2021.  (*See* Appx2.)  It is simply not credible for the Commission to claim that it was not aware of the above undisputed facts prior to the issuance of the APO denial decision.

Third, it is the Commission's fault that these undisputed facts were not formally presented as part of the safeguard extension proceeding.  Plaintiffs' initial brief sets forth in detail the actual sequence of events concerning the APO applications of the four individual Curtis attorneys.  ECF No. 23-1, at 2-6.

As noted in our initial brief, it was not until September 17th—after this action had been brought—that the Commission expressed for the first time any concern that the four Curtis attorneys posed an "enhanced risk" of disclosure to the Government of China.  The initial Commission letter dated August 19th did not raise this point, but only articulated a vague concern regarding a purported positional conflict arising from Curtis attorneys' advocacy of somewhat different positions on the solar-cell safeguard measures while representing different clients.  Nor did the Commission ask for any clarification during the next four weeks between August 19th and the final denial of APO access on September 17th.  (*See* Appx2.)  The Commission never—not once—asked about possible future work

with the Government of China in the WTO case, the apparent source of concern.   An agency cannot make adverse assumptions without seeking the specific information desired. Indeed, this basic principle of common sense has been codified in the trade law world at 19 U.S.C. §1677e.   If the Commission truly had a concern about "enhanced risk" of disclosure to the Government of China of APO information, the Commission had an obligation to ask.   As matter of equity and fairness, the Commission cannot refuse to ask any questions about a critical factual assumption and then claim that absence of information justifies making an adverse assumption.

This is particularly unfair given that, immediately after receiving the Commission's September 17th APO denial letter, undersigned counsel sent Commission counsel an email that stated:

> Upon reviewing Lisa Barton's Friday letter there seems to be some confusion about relevant facts.   And clearing up this confusion might well lead to a resolution without a court proceeding.

(*See* Appx3.)   Commission counsel never replied to this message.   The Commission seems more concerned about defending its erroneous decision than making an APO decision based on correct facts.

In short, there is no question that the Commission's APO denial decision was premised upon a factual assumption—about counsel's continued communication with the Government of China about the WTO case—that is demonstrably not true.   The Commission's arguments to have this Court put on blinders and ignore the factually incorrect assumption have no merit.

- 20 -

In addition, the Commission does not adequately address Plaintiffs' argument that the risk of improper disclosure of APO information is already addressed by the existing framework of APO protocols and requirements. The existing APO already has a specific requirement to limit use of any APO information only in connection that specific Commission proceeding. *See* ECF No. 23-2, Exs. 1, 6. And the Commission has a history of enforcing this provision. *See* ECF No. 23-2, Ex. 15. In their opening brief, Plaintiffs argued that the Commission has not articulated any reason why this existing APO safeguards are not sufficient. ECF No. 23-1, at 16. Moreover, if the Commission were truly concerned about some particular possibility that Curtis attorneys might share CBI from the Commission Proceeding notwithstanding these existing safeguards, then 19 C.F.R. §206.17(b) allows the Secretary to impose additional conditions in the APO. *Id.*

Indeed, Plaintiffs note that the APO does impose such conditions for all categories of "authorized applicants" <u>except</u> outside counsel. With regard to outside counsel—an "attorney, except in house corporate counsel"—the APO application allows one to establish status as an authorized applicant without any additional representations. The existing procedures include the option to disbar an attorney from future practice before the Commission, and provide sufficient safeguards to protect the APO information from improper disclosure.

In response, the Commission contends that the court's decision in *Makita v. United States*, 17 CIT 240, 819 F. Supp. 1099 (1993), supports the Commission's underlying "enhanced risk" conclusion, and therefore the Commission's effective conclusion that the existing APO safeguards are not adequate. Def. Opp. 31-32. However, the Commission's

analysis of *Makita* is completely backwards.   *Makita* actually demonstrates why the

Commission's APO denial decision in this case lacks merit.

*Makita* involved the following key facts:

- Black and Decker filed a petition and was represented by Law Firm A.  17 CIT at 240.

- Law Firm A submitted an APO application to the Commerce Department for several attorneys, including an individual attorney.  *Id.*

- One of the respondents Makita immediately filed a specific  objection to the APO application of the individual attorney because that attorney had previously assisted another law firm's representation of Makita in a Section 337 case brought by Makita.  *Id.* at 240-41.

- In submitting its objection to the APO application of the individual attorney, Makita claimed that the individual attorney had reviewed specific **confidential Makita information** during the Section 337 proceeding and that such confidential information would help the individual attorney prosecute the AD case against Makita.  *Id.*

- Notwithstanding Makita's objection, Commerce granted the APO application for the individual attorney.  According to Commerce, their sole criterion for whether to grant APO application was whether the relationship in question would compromise the proprietary APO information to be released in the Commerce proceeding.  *Id.* at 241-42.

- Makita appealed (long before Commerce's final determination) challenging Commerce's grant of APO to the individual attorney.  *Id.* at 242-43.

Faced with these facts, the court recognized that the case involved "issues of unusual

sensitivity" including "effective assistance of counsel in the absence of {APO}

information."  *Makita*, 17 CIT at 240.  Although the it is true the court determined that

access to APO information by the individual attorney in that case posed a problem, it is

equally true that this court decision stands for multiple points that support Plaintiffs'

position here.

For example, the court explicitly ruled that it had jurisdiction under 28 U.S.C. §1581(i) to hear an immediate challenge to an agency decision concerning APO access (without waiting until the agency had rendered a final determination).  *Id.* at 245. The court also noted that, under the specific applicable statutory provision, 19 U.S.C. §1677f, "the specified exceptions to {granting APO access} are intended to be very narrow and limited for the statute favors production."  *Id*. at 244.  This court ruling is particularly noteworthy for this case given that SAA explicitly noted that the Commission's APO procedures should follow those under 19 U.S.C. §1677f.

Most importantly, the court stressed "this case requires the court to look at the present and the future" and whether granting APO access would unduly harm a party's interests during the agency proceeding.  *Id*. at 250 (emphasis added).  This supports Plaintiff's position, not the Commission's position.  In the instant proceeding, there are 31 separate interested parties; however, not a single other interested party has objected to the APO application of the four Curtis attorneys before the Commission made its September 17, 2021 decision.  See Appx4 providing EDIS docket entry for all submissions through September 16th.  This fact is fatal to the Commission's position because the Commission has not identified how granting APO access would provide some sort of competitive advantage to one party over another during the Commission's safeguard extension proceeding.  Rather, the Commission only claims (effectively) that granting APO access might give Curtis an advantage in some future WTO case.  *Makita* provides no support for this Commission theory, which is baseless given that it is undisputed that Curtis no longer represents the Government of China in the WTO case.

In short, the Commission has failed to rebut Plaintiffs' demonstration that the Commission's APO denial decision is premised upon two factual assumptions that are demonstrably not true.

### C.   The Commission's Argument That Plaintiffs Have Not Suffered Harm Must Be Rejected

The Commission's final argument is an attempt to persuade the Court that this case represents the proposition "no harm, no foul."  The Commission argues that Plaintiffs' claim of harm from the Commission's decision to preclude Daniel Porter and James Durling from fully participating in the safeguard extension hearing should be discounted because the Commission granted APO access to other Curtis attorneys.  But there are two important reasons why this Court must reject this argument.

First, the Commission's argument is off-base.  All trade attorneys are not equally appropriate and interchangeable for every trade case.  Trade attorneys are not checker pieces that can be swapped in out of a trade case with ease.  Rather, past experience allows trade attorneys develop experience and expertise about industry competitive dynamics, and allows the attorneys to develop working relationships with a client's personnel.  It is for this reason that the vast majority of interested parties will keep the same trade counsel from one phase of a trade case to the next.

And indeed, this is precisely why Plaintiffs LG wanted Messrs. Porter and Durling as their chosen counsel for this extension proceeding.  The Commission claims that the Secretary granted APO applications for four attorneys from Curtis with relevant experiences.  Def. Opp. 34.  But such facts are completely irrelevant.  Although these Curtis

attorneys may have substantial experience in trade cases, and these attorneys may have been granted APO access in past solar-cell proceedings, and while these attorneys may have even helped out on a task or two in the prior Commission proceedings, none of these Curtis attorneys played an active role in representing LG. Such fact can be documented from the cover pages of all the briefs that were filed on LG's behalf during the prior Commission proceedings. (*See* Appx5.) As noted in Appx5, during the prior Commission proceedings, LG submitted five briefs and three requests to participate in the Commission hearings. Of the eight Curtis attorneys, only Messrs. Porter and Durling appeared on the cover pages of LG's prior briefs. And therefore, only these specific attorneys developed experience and expertise about the CSPV industry competitive dynamics, and developed working relationships with LG personnel.

Second, we respectfully submit that this Court should not accept the Commission's effort tell an interested party that its desire to have counsel of its own choosing can be ignored because other counsel may be available. And indeed, *Makita* reinforces this point. Notwithstanding that the case concerned the APO application of a rather junior lawyer at a law firm in which other attorneys had been granted APO application without objection, the *Makita* court still noted that the case involved "issues of unusual sensitivity" including "effective assistance of counsel in the absence of {APO} information." 17 CIT at 240. A client has a fundamental right to choose their own counsel. This Court should not accept the Commission's argument that such right does not matter. LG desires to have Dan Porter and Jim Durling represent their interests.

## III.   THIS COURT SHOULD EXERCISE ITS EQUITABLE POWERS TO DO THE RIGHT THING

Finally, we ask this Court to exercise its full powers of equity to accomplish the correct result; namely, the Commission should grant APO access with whatever conditions the Commission believes are necessary vis-à-vis the WTO case. Following the conference with this Court, Plaintiffs repeatedly tried to engage with Commission counsel to accomplish this correct result; however, Commission had no interest even in having a discussion. That the Commission has decided, for whatever reason, that it prefers to fight in court litigation does not prevent this Court from requiring the correct result. We ask this Court to use it equitable power to do so.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court enter a judgment (1) declaring that Mr. Porter, Mr. Durling, and the other Curtis attorneys are entitled to APO access in the Proceeding, and ordering the Commission to provide APO access to these attorneys; and (2) providing any other relief this Court deems just and proper.

October 6, 2021                          Respectfully submitted,

                                         CURTIS, MALLET-PREVOST, COLT &
                                         MOSLE LLP

                                         /s/ Daniel L. Porter
                                         Daniel L. Porter
                                         James P. Durling
                                         James Beaty
                                         1717 Pennsylvania Avenue, N.W. 13th Floor
                                         Washington, D.C.  20006
                                         (202) 452-1717

                                         /s/ Jonathan Walsh
                                         Jonathan Walsh
                                         Nathaniel Ament-Stone
                                         101 Park Avenue, 36th Floor
                                         New York, New York 10178
                                         (212) 696-6000

                                         *Attorneys for Plaintiffs*

**APPENDIX LIST FOR PLAINTIFF'S REPLY BRIEF**

| Appx Doc. | Description | EDIS No. |
|---|---|---|
| 1 | Email From J. Beaty to Secretary Barton, Re: Initiating Documents for Court Appeal of Curtis APO (Sept. 16, 2021) | N/A |
| 2 | Letter From Secretary Barton, Re: Administrative Protective Order Application (Sept. 17, 2021) | 752072 |
| 3 | Email From D. Porter to A. Casson, Re: Seeking Opportunity to talk (Sept. 20, 2021) | N/A |
| 4 | List of Docket Entries in Safeguard Proceedings | N/A |
| 5 | Selected Pages from Briefs and Documents Submitted by LG Electronics in Earlier Phases of Inv. TA-201-075 | 612712, 619483, 619484, 620876, 624067, 625173, 695749, 695903, 697121 |

## <u>WORD COUNT CERTIFICATE OF COMPLIANCE</u>

This brief has been prepared utilizing Microsoft Word 2010 using a proportionally spaced typeface 13-point Times New Roman font.

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief as set forth in 2(B)(1) of the Chambers Procedures, I hereby certify that this brief contains 6,977 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

<u>/s/ Daniel L. Porter</u>

Daniel L. Porter
Curtis, Mallet-Prevost, Colt & Mosle LLP
1717 Pennsylvania Avenue, NW
Washington, D.C., 20006

*Counsel for Plaintiffs*

Dated: October 6, 2021